STEVEN A. SUSSMAN *vs.* COMMONWEALTH.

Suffolk. November 10, 1977. — March 22, 1978.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Contempt. Attorney at Law,* Contempt.

Except in cases of flagrant contemptuous conduct, a trial judge should not exercise the power of summary contempt in the absence of a prior warning as to the conduct which would place the defendant in contempt. [697-698]

When summary contempt proceedings are invoked, a trial judge should give the contemnor an adequate opportunity to defend or explain his conduct before imposition of punishment. [699]

A trial judge erred in holding an attorney in criminal contempt without first giving him a proper admonition and warning and an effective opportunity to be heard in his defense. [699-701]

A summary adjudication of criminal contempt against an attorney trying a case was wholly unwarranted by the record. [701-702] HENNESSEY, C.J., concurring.

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on December 17, 1976.

The case was reported by *Kaplan, J.*

*Gerard F. Schaefer (Susan J. Baronoff* with him) for the petitioner.

*Kathleen King Parker,* Assistant Attorney General, for the Commonwealth.

LIACOS, J. This petition for a writ of error attacks a summary judgment of criminal contempt entered in the Superior Court against the petitioner, an attorney with the Massachusetts Defenders Committee.[1] The Commonwealth's answer admitted all the essential facts alleged in the petition but denied the allegations that the petitioner had been unlawfully adjudged in contempt. The Commonwealth also filed a motion to dismiss the petition in so far as it contained allegations that the petitioner was not contumacious and that there was insufficient evidence to support the judge's ruling. A single justice of this court reserved and reported the case without decision on the petition (including that portion of the transcript appended to the petition), the assignment of errors, the return of the Superior Court judge, and the Commonwealth's answer and motion to dismiss.[2] We reverse.

---

[1] Pursuant to S.J.C. Rule 3:22, Canon 7, 359 Mass. 818 (1971), and S.J.C. Rule 3:25, Canon 3 (B) (3) (b), 359 Mass. 842 (1971), a Superior Court judge notified this court that the petitioner's conduct violated Ethical Considerations (EC) 7-22 and 7-25, and Disciplinary Rule (DR) 7-106 (C) (2) of the American Bar Association Code of Professional Responsibility. The judge, however, expressed the view that no further disciplinary action was warranted. The matter was referred to the Board of Bar Overseers and was later dismissed on the board's recommendation. (Supreme Judicial Court No. 76-23 BD).

[2] The Commonwealth has moved for leave to enlarge the record to include a transcript of certain proceedings on November 12, 1976, two days after the petitioner was cited for contempt of court. The petitioner has objected to the allowance of this motion. We have examined this transcript along with the rest of the record. G. L. c. 250, § 2. Mass. R. A. P. 8 (a), as amended, 367 Mass. 919 (1975). See *Callahan* v. *Callahan*, 345 Mass. 244, 245 (1962). Cf. Mass R. A. P. 18 (a), 365 Mass. 864 (1974); *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. 147, 150 (1976). In the view

The petitioner has been an attorney with the Massachusetts Defenders Committee since March, 1972. In September, 1975, he was appointed defense counsel in a jury trial of one Totton who had been indicted for rape and unnatural acts.[3] After the alleged victim testified that she was married and was living in Maine, the petitioner asked early in his cross-examination, "And who do you live in Maine with?" The Commonwealth objected to the question and requested a bench conference. At the bench conference, the Commonwealth explained that its objection was on the grounds that it was irrelevant with whom the witness was now living and that, further, defense counsel knew that the witness was presently living with someone who was not her husband. This colloquy between the judge and the petitioner ensued:

THE JUDGE: "What is the relevance, Mr. Sussman?"

COUNSEL: "Your Honor, I think an issue in this case brought up by the government is the girl's respectability."

THE JUDGE: "You can't do that by particular episodes, reputation only."

COUNSEL: "I think the jury are entitled to know a little bit about the woman, your Honor, her credibility —"

THE JUDGE: "That is too vague a response. I will sustain the objection. I also take note that we have discretion to protect home addresses of rape victims or alleged rape victims. The objection is sustained."[4]

The petitioner resumed his cross-examination of the witness with the question, "Mrs. Morin, you are now living

we take, consideration of this portion of the transcript adds little to the Commonwealth's case.

[3] *Commonwealth* v. *Stephen Totton,* Superior Court, Middlesex County, indictment Nos. 75-4362, 75-4363. An earlier trial on these indictments resulted in a mistrial after the jury deliberated approximately nine hours without reaching a verdict.

[4] General Laws c. 233, § 21B, inserted by St. 1977, c. 110, sets forth limitations on the use of evidence to impeach the testimony of the victim-witness in cases such as this. This statute was not in effect at the time of the trial, and nothing we say here reaches the question of appropriate procedures under the new limitations on impeachment imposed by § 21B.

with your husband in Maine?" The witness answered, "No," and on another objection from the Commonwealth the judge remarked, "I just ruled that out. Do you want a mistrial, Mr. Sussman?" The judge excluded the question, and instructed the jury to draw no inferences from it.

Without comment or argument, the petitioner abandoned this line of questioning, and asked several more questions involving the night of the alleged crime. The judge then interrupted the cross-examination to call a recess. Once the jury left the court room the judge announced that he was holding the petitioner in contempt and fining him $50 for his "deliberate flouting of the Court's ruling" by asking the question which followed the bench conference. The petitioner sought to be heard on the matter but was able to give only a few words of explanation when the judge refused to let him be heard further in his defense.

In the assignment of errors accompanying his petition for a writ of error, the petitioner alleges that (1) his conduct did not constitute contempt of court, (2) there was insufficient evidence that he intentionally and deliberately disobeyed an order of the judge, (3) the failure to warn him that he was in danger of being held in contempt and to afford him an adequate opportunity to be heard deprived him of due process of law, and (4) the use of summary contempt proceedings in his case was improper.

1. We turn first to the petitioner's claim that he was improperly held summarily in criminal contempt without warning or an adequate opportunity to defend himself.

(a) Trial judges have the inherent power to deal with contumacious conduct in the court room in order to preserve the dignity, order, and decorum of the proceedings. *Illinois* v. *Allen,* 397 U.S. 337, 343-344 (1970). *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 373 (1927). See *Opinion of the Justices,* 314 Mass. 767, 783-784 (1943). Such power is not without limitation. Unless the contempt occurs in the presence of the judge and immediate punishment is needed to prevent "demoralization of the court's authority," *In re Oliver,* 333 U.S. 257, 275 (1948), or to enforce "lawful

orders essential to prevent a breakdown of the proceedings," *United States* v. *Wilson,* 421 U.S. 309, 319 (1975), many of the due process safeguards available in criminal proceedings should apply to a contempt proceeding. See, e.g., *Bloom* v. *Illinois,* 391 U.S. 194 (1968); *Garabedian* v. *Commonwealth,* 336 Mass. 119, 124-125 (1957). Summary punishment for direct contempt "is warranted only when essential to the orderly administration of justice." *Opinion of the Justices, supra* at 784.

Contumacious conduct may take many forms and may occur either within or without the presence of the judge. Dobbs, Contempt of Court: A Survey, 56 Cornell L. Rev. 183 (1971). "No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Illinois* v. *Allen, supra* at 343. The exercise of the summary power of contempt is "a delicate one and care is needed to avoid arbitrary or oppressive conclusions." *Bloom* v. *Illinois, supra* at 202, quoting from *Cooke* v. *United States,* 267 U.S. 517, 539 (1925). Where that summary power is exercised, as here, against a member of the bar representing a client at trial, care must be taken that the right of the client to vigorous advocacy by the attorney is not chilled or defeated. *In re Hallinan,* 71 Cal. 2d 1179 (1969). Cf. *Commonwealth* v. *Davis,* 364 Mass. 555 (1974).

In a summary criminal contempt proceeding against an attorney based on his court room conduct, we must balance the trial judge's obligation to protect the processes of orderly trial with the attorney's obligation zealously to protect the client's interest. In determining whether the power to punish summarily is justified, we must give due weight to the importance of vigorous advocacy. To do otherwise would chill the less courageous attorney in his efforts to represent his client effectively. A significant consequence of the use of the summary contempt power also involves the loss of due process requirements that ordinarily attach to contempt proceedings. Consequently "[t]he narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge,

which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *In re Oliver, supra* at 275. See *Cooke* v. *United States*, 267 U.S. 517 (1925).

Except in cases of flagrant contemptuous conduct, the trial judge should not exercise the power of summary contempt in the absence of a prior warning as to the conduct which would place the offender in contempt. The nature of such warning is that it must be made clear to the attorney that such conduct is impermissible and that specified sanctions may be imposed for its repetition. The requirement of such a warning is not inconsistent with the role of the judge as "the directing and controlling mind at the trial, and not a mere functionary to preserve order and lend ceremonial dignity to the proceedings." *Whitney* v. *Wellesley & Boston St. Ry.*, 197 Mass. 495, 502 (1908). See *Commonwealth* v. *Lewis*, 346 Mass. 373 (1963), cert. denied, 376 U.S. 933 (1964).

While it is clear that a lawyer may be held in contempt by persisting in asking questions or pursuing an argument which the judge has excluded, provided such persistence amounts to an obstruction of the conduct of the trial, the necessity of such warnings is particularly warranted in regard to cross-examination of a witness. See *Alford* v. *United States*, 282 U.S. 687 (1931). Not knowing where the judge has drawn the line between vigorous examination or argument and contempt of court, the lawyer might refrain from zealously advocating the client's position in order to avoid a contempt citation. See ABA Standards Relating to the Function of the Trial Judge §§ 7.1, 7.2 (Approved Draft 1972).[5] If the judge warns the lawyer that a particular line

---

[5] The American Bar Association Advisory Committee on the Judge's Function has set forth these standards for the use of the contempt power:

"7.1 Inherent power of the court.

The court has the inherent power to punish any contempt in order to protect the rights of the defendant and the interests of the public by assur-

of examination will not be allowed, the lawyer's proper course is clear. He should desist, taking such steps only as are necessary to preserve his client's right of appellate review. Should the lawyer not follow this procedure, but persist in asking the same or similar questions, the judge should advise him to desist lest he be found in contempt.

This requirement of admonition and warning appears to us to be appropriate as a means of achieving a proper balance between the interests of the court and the right of a party to effective and vigorous advocacy.

Other courts have imposed limitations on the exercise of a trial judge's summary power of contempt. See, e.g., *United States v. Brannon,* 546 F.2d 1242, 1249 (5th Cir.), rehearing denied, 549 F.2d 204 (1977); *United States v. Seale,* 461 F.2d 345, 366 (7th Cir. 1972); *Smith v. State ex rel. Raburn,* 536 P.2d 976, 981 (Okla. Crim. 1975). Cf. *Illinois v. Allen,* 397 U.S. 337, 350 (1970) (Brennan, J., concurring). See also ABA Standards Relating to the Function of the Trial Judge §§ 7.3, 7.4 (Approved Draft 1972).[6]

---

ing that the administration of criminal justice shall not be thwarted. The trial judge has the power to cite and, if necessary, punish summarily anyone who, in his presence in open court, willfully obstructs the course of criminal proceedings."

"7.2 Admonition and warning.

No sanction other than censure should be imposed by the trial judge unless

    (i) it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous, or

    (ii) the conduct warranting the sanction was preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition."

[6] "7.3 Notice of intent to use contempt power; postponement of adjudication.

(a) The trial judge should as soon as practicable after he is satisfied that courtroom misconduct requires contempt proceedings, inform the alleged offender of his intention to institute such proceedings.

(b) The trial judge should consider the advisability of deferring adjudication of contempt for courtroom misconduct of a defendant, an at-

In addition, when summary proceedings are properly invoked, "the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution." *Taylor* v. *Hayes,* 418 U.S. 488, 498 (1974), quoting from *Groppi* v. *Leslie,* 404 U.S. 496, 504 (1972). See ABA Standards, § 7.4, *supra* at note 6; Proposed R. Crim. P. for Dist. & Super. Cts. 44 (b) (1977). Cf. art. 12 of the Declaration of Rights of the Commonwealth. Especially in light of the potential for abuse of the contempt power, an adequate opportunity to defend or explain one's conduct is a minimum requirement before imposition of punishment.

(b) Having stated the relevant procedural requirements for the proper exercise of the summary contempt power, we turn to consideration of the particular facts of this case.

The petitioner's conduct here was not an instance of flagrant contempt. The first question put to the complaining witness inquired as to whom she was living with in Maine. After objection to this question was sustained, the petitioner rephrased the question, a not uncommon trial practice. In asking by the second question as to whether the alleged rape victim lived with her husband, the petitioner did not clearly flout the judge's earlier ruling which prohibited inquiry into the witness's living companion in Maine. There is no reason to believe that an admonition to the petitioner outside the presence of the jury would not have been an effective measure. See *Commonwealth* v. *Haley,* 363 Mass. 513, 520-521 (1973); *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 277, cert. denied, 389 U.S. 916 (1967). Indeed, the petitioner asked no further questions about the witness's background after the judge suggested a

torney or a witness until after the trial, and should defer such a proceeding unless prompt punishment is imperative."

"7.4 Notice of charges and opportunity to be heard.

Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment."

mistrial might be declared. While persistence in asking the same question or proffering the same evidence after adverse rulings have been made may rise to the level of contemptuous conduct, a proper admonition and warning by the trial judge is ordinarily required before a finding of contempt can be made. *Fisher* v. *Pace,* 336 U.S. 155 (1949). See *Sacher* v. *United States,* 343 U.S. 1 (1952).

The need for immediate punishment was clearly absent here. This is not a case where court room order had disintegrated or a trial had been brought to a standstill. See, e.g., *United States* v. *Wilson,* 421 U.S. 309, 315-316 (1975) (witness defied a direct order that he testify); *Ex parte Terry,* 128 U.S. 289, 307-308 (1888) (counsel assaulted a United States marshal). Cf. *Fisher* v. *Pace, supra* (attorney persisted in referring to matters not in issue before the jury despite two admonitions from the trial judge). The fact that the judge saw fit to wait until a number of other questions had been asked before excusing the jury so as to advise the petitioner he was found in contempt, while appropriate by itself, serves to confirm the fact that no urgent and pressing matter of disruption was involved.[7]

We also think that the petitioner was denied an effective opportunity to be heard. During the recess when the judge found him in contempt of court, the petitioner was able to interject only a few words in his defense.[8] Contrary to the

---

[7] In these circumstances, the judge might well have considered whether it would be appropriate to defer the matter even further for a plenary hearing on completion of the trial. See *Sacher* v. *United States,* 343 U.S. 1 (1952) (postponing lawyer's contempt adjudication avoids possible prejudice to client); *United States* v. *Schiffer,* 351 F.2d 91, 95 (6th Cir. 1965), cert. denied, 384 U.S. 1003, rehearing denied, 385 U.S. 890 (1966). See also ABA Standards Relating to the Function of the Trial Judge §§ 7.3, 7.4, 7.5 (Approved Draft 1972). As to the appropriate procedures in such a deferred plenary hearing, see *Taylor* v. *Hayes,* 418 U.S. 488, 498-499 (1974). Cf. Proposed R. Crim. P. for Dist. & Super. Cts. 44 (a) (2), and 45 (a) (1977).

[8] The petitioner's defense was limited to the following:

COUNSEL: "May I be heard on that, your Honor."

THE JUDGE: "Yes."

COUNSEL: "Your Honor please, I thought your ruling went to the question of who she was living with in Maine, going to the question of what

Commonwealth's assertion, we view this as an inadequate opportunity to defend oneself.[9]

We conclude that because of the procedural infirmities described above the adjudication of contempt cannot stand.

2. The petitioner has also claimed that the judgment of comtempt must be reversed on substantive as well as on procedural grounds. The Commonwealth contends that the merits of this contempt judgment are not cognizable on a writ of error. It was on this basis that it filed its motion to dismiss. It is the Commonwealth's position that a petition for writ of error brings here no question of alleged errors in findings of fact but allows review only as to whether there is error of law shown on the record. See *Blankenburg* v. *Commonwealth*, 260 Mass. 369 (1927). The Commonwealth also relies on *Silverton* v. *Commonwealth*, 314 Mass. 52 (1943).

We note that the trial judge did not conform to the suggestion in *Silverton*, at 56, that the "better practice" would be to set forth "definitely in the order the acts which are found to constitute contempt." Cf. *Albano* v. *Commonwealth*, 315 Mass. 531 (1944). Nevertheless, the parties by

---

the family situation was relative to children. And it was brought out in the last trial that she was separated from her husband, and I thought it was proper to bring it out at this trial."

THE JUDGE: "That does not strike me as complying with the representation you made at the side bar that you thought the jury was entitled to hear something about her, where she claimed she was respectable, and the representation that was made that she was no longer living with her husband.

"It strikes me as just a deliberate flouting of the Court's order and an attempt to gain an unfair advantage."

COUNSEL: "If I may, your Honor —"

THE JUDGE: "And that is the end of it. We will take a short recess."

An examination of the transcript of the proceedings which occurred two days later merely confirms our view that the petitioner was denied a meaningful opportunity to be heard.

[9] It was unclear here whether the petitioner intended to disobey the judge's ruling. As one commentator noted, "Even if the external facts are clear because they took place in the presence of the judge, the issue of motive or intent is subject to exploration." Dobbs, Contempt of Court: A Survey, 56 Cornell L. Rev. 183, 229 (1971).

their pleadings have established that the transcript attached to the petition is the basis of the judge's action, and that the judge sent the same portion of the transcript to this court as part of his report under S.J.C. Rules 3:22 and 3:25.

In these circumstances we think this record falls within the principles enunciated by this court in *Sandrelli* v. *Commonwealth*, 342 Mass. 129 (1961), as well as in other cases where the record on its face shows that contempt could not be found as matter of law. See, e.g., *Taylor* v. *Commonwealth*, 369 Mass. 183 (1975); *Shaw* v. *Commonwealth*, 354 Mass. 583 (1968); *Worcester Telegram & Gazette, Inc.* v. *Commonwealth*, 354 Mass. 578 (1968). Cf. *Garabedian* v. *Commonwealth*, 336 Mass. 119 (1957).

Our review of the record, as previously set forth, reveals no contemptuous act or intent on the part of the petitioner. The adjudication of contempt is substantively as well as procedurally invalid.

*Judgment reversed.*

HENNESSEY, C.J. (concurring). I concur with the result of the main opinion, and with almost all its reasoning. Nevertheless, I think it necessary to add a few observations. I think the implications of this case, and any similar case, reflect most importantly on the judicial obligation to ensure a fair and impartial trial. Impartiality, and the appearance of impartiality in the eyes of the jury, are thwarted by the failure of judicial restraint; by the hasty use of the contempt power, or the unwarranted threat of its use; by unwarranted intimidation of any kind which may serve to repress the attorney in his performance of his duty as a vigorous advocate; and by colloquies and jousts of a disciplinary tone between judge and counsel within the hearing of the jury.[1]

---

[1] In this case we observe that the judge so acted as to keep the controversy, for the most part, from the jury's attention.

Nevertheless, counsel has obligations as well. The main opinion fails to state what I think is clear in the record of this case: that the judge was warranted in concluding that the defense attorney had deliberately and almost immediately flouted his ruling. The attorney asked the witness a question which the judge could reasonably infer was substantially the same as the question which had just been specifically excluded by the judge. Further, the controversial questions concerned a crucial point of evidence, since counsel, contrary to the judge's ruling, appeared to be inquiring as to the habits and reputation for chastity of an alleged rape victim.

I do not conclude that counsel was wilfully evading the judge's ruling, nor do I urge this court to so conclude. I do say that the record fully warranted the trial judge in drawing that inference, and it is obvious that he did. It is also clear, as shown in the main opinion, that the judge overreacted thereafter. Since power resides in the judge, he has the primary duty to protect the impartiality of the trial. Nevertheless, the lesson is clear that counsel has a duty toward the concept of impartiality. His recourse is to offer legal argument to the trial judge at the right time and place, and to save his client's appellate rights if the ruling is adverse. If counsel oversteps, it increases the likelihood of unseemly developments. These in turn may result in regrettable curbing by the judge of the lawyer in the advocacy of his client's cause, and may divert the jury from the truth by injecting extraneous and obvious tensions between judge and counsel.