COMMONWEALTH *vs.* PAUL CORSETTI.

Middlesex. January 4, 1982. — July 30, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Newsman. Evidence,* Privileged communication. *Constitutional Law,* Freedom of speech and press. *Contempt.*

A newsman has no constitutional right to refuse to testify concerning information acquired in confidence. [4]

A newsman who had written a newspaper article bearing his by-line and disclosing certain information as well as its source and who had promised that he would not testify in court about the information disclosed by the source was not exempted from testifying in criminal proceedings against the source by any common law privilege. [4-6]

A newsman's refusal, based upon a faulty claim of privilege, to testify at a pretrial hearing in a criminal case was a sufficient disruption of court proceedings to warrant summary contempt action under Mass. R. Crim. P. 43 (a). [6-10]

ADJUDICATION of contempt in the Superior Court Department by *Barton,* J., on March 11, 1981.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas C. Troy (Robin Ultch* with him) for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney (*Carmel A. J. Motherway,* Assistant District Attorney, with him) for the Commonwealth.

*Gerald May, Sr.,* for The Hearst Corporation, amicus curiae, submitted a brief.

NOLAN, J.   On March 11, 1981, Paul Corsetti, a reporter for the Boston Herald American newspaper, was called to testify at a hearing on pretrial motions to suppress evidence filed by Edward R. Kopacz, Jr.   Kopacz was under indictment in Middlesex County for the murder of Curtis Dale Barbre.[1]   Prior to trial, Kopacz filed a motion to suppress statements allegedly made by him to two police officers and to Corsetti.[2]   Kopacz contended that Corsetti was an agent of the police or the Commonwealth and, therefore, Miranda warnings should have been given before any statement was taken from him.   He also argued that any statements made by him were not voluntarily tendered.

Corsetti was originally called to testify at a hearing on the defendant's motion to suppress on March 6, 1981.   At that time he refused, based on his claim of a reporter's privilege, to state whether he was the author of a newspaper article carrying his by-line and implicating Kopacz in the murder. The court ruled that Corsetti had no such privilege, summarily adjudicated him in contempt, and gave him until March 11, 1981, to be heard on disposition.

---

[1] Kopacz was subsequently found not guilty.

[2] In December, 1979, Corsetti went to the Volusia County Jail in Florida where Kopacz was incarcerated.   Corsetti's request to interview Kopacz was denied by the warden.   Corsetti left his telephone number with the warden.   Later that evening, Corsetti received a telephone call from someone identifying himself as Kopacz.   Corsetti gave the caller his Boston telephone number and returned to Boston.

Shortly thereafter, Corsetti received a telephone call from someone who again identified himself as Kopacz.   Corsetti could not say whether the two telephone calls came from the same person.   Based on this call, Corsetti wrote a newspaper article entitled "Convict, 18, admits role in gay murder."   This story appeared in the Boston Herald American on December 15, 1979.   Kopacz was attempting to suppress the statements made to Corsetti in this and several other telephone calls.   Corsetti testified that he had promised that he would not testify in a court of law as to what Kopacz had told him.

On March 11, Corsetti acknowledged his authorship of the article and answered several other questions. The contempt order of March 6 was dismissed. When asked, however, to relate the substance of the telephone call upon which he based his article, Corsetti again refused to answer.[3] Corsetti based his refusal on assertions of a reporter's privilege grounded on the First Amendment to the United States Constitution, art. 16[4] of the Declaration of Rights of the Massachusetts Constitution, set forth in full in the margin, and the common law.[5] The judge again rejected Corsetti's claim of privilege and summarily adjudicated him in contempt of court pursuant to Mass. R. Crim. P. 43, 378 Mass. 919 (1979). Corsetti was sentenced to a house of correction for three months which sentence was stayed for forty-eight hours.

---

[3] There is a question whether the conversation between Corsetti and Kopacz could be authenticated. If the conversation could not be authenticated, perhaps Corsetti should not have had to answer a question about its contents and the privilege question would not, therefore, be reached.

We note first that, while Corsetti broached the question of authentication, his brief contains no argument that he was excused from answering the question put to him because the conversation was not authenticated. Thus the issue is deemed waived. Mass. R. A. P. 16(a) (4), as amended, 367 Mass. 919 (1975).

If we reached the authentication issue, Mass. R. A. P. 2, 365 Mass. 845 (1974), perhaps we would find the question asked of Corsetti to be proper. The mere assertion by the caller that he was Kopacz is not, of course, sufficient to authenticate the conversation. *Commonwealth* v. *Hartford*, 346 Mass. 482, 488 (1963). However, prior to Corsetti's testimony, Lieutenant Thomas Castles had testified that Kopacz had admitted talking to Corsetti and had told the same story that he (Kopacz) had told the police. This admission would help to authenticate the telephone call. *Commonwealth* v. *Hartford, supra.*

[4] Article 16, as appearing in art. 77 of the Amendments to the Massachusetts Constitution provides: "The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this commonwealth. The right of free speech shall not be abridged."

[5] The judge, in his findings, stated that a common law claim of privilege had not been asserted. Corsetti assures us that he did claim such a reporter's privilege based on the common law. The transcript of the hearing before the judge supports Corsetti's version. Corsetti's common law claim is thus properly before this court.

Corsetti petitioned a single justice of the Appeals Court for a further stay of execution pending appellate review of the contempt order. The single justice granted the stay. The Commonwealth appealed the stay to a single justice of this court, who denied relief to the Commonwealth. The Commonwealth's application for direct appellate review was allowed.

We hold that Corsetti could avail himself of no privilege, that he was guilty of contempt under rule 43, and that the judge gave him sufficient notice and a full and fair opportunity "to adduce evidence or argument relevant to guilt or punishment." Mass. R. Crim. P. 43 (b).

*Constitutional claims.* This court recently stated that "we do not believe that the First Amendment creates at the level of constitutional doctrine an exception to the 'long-standing principle that "the public . . . has a right to every man's evidence."'" *Matter of Roche,* 381 Mass. 624, 633 (1980), quoting from *Branzburg* v. *Hayes,* 408 U.S. 665, 688 (1972), and from *United States* v. *Bryan,* 339 U.S. 323, 331 (1950). "[A] [S]tate can neither add to nor subtract from the mandates of the United States Constitution." *Commonwealth* v. *Cote,* 386 Mass. 354, 361 (1982), quoting from *North Carolina* v. *Butler,* 441 U.S. 369, 376 (1979). Corsetti's First Amendment argument thus fails. See also *Matter of Pappas,* 358 Mass. 604, 612 (1971), aff'd sub nom. *Branzburg* v. *Hayes,* 408 U.S. 665 (1972); *Dow Jones & Co.* v. *Superior Court,* 364 Mass. 317, 320 (1973). Further, in this case, for the reasons set forth in considering the common law claim we see no reason to construe our State Constitution in this respect more broadly than the Supreme Court has construed the First Amendment.

*Common law claim.* While certain Justices of this court have noted their willingness to consider the recognition of a common law reporter's privilege, *Matter of Roche,* 381 Mass. 624, 640 (1980), the publication of the newspaper article in this case negates any such privilege

here.[6]  Testimonial privileges are exceptions to the general duty imposed on all people to testify.  *Matter of Roche*, 381 Mass. 624, 632-633 (1980).  *United States* v. *Bryan*, 339 U.S. 323, 331 (1950).  8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961).  All such privileges necessarily diminish the quantum of evidence that is before the court. P.J. Liacos, Massachusetts Evidence 174 (5th ed. 1981). Thus, privileges are generally strictly confined.  *Foster* v. *Hall*, 12 Pick. 89, 97 (1831) ("[The] rule of privilege, having a tendency to prevent the full disclosure of the truth, ought to be construed strictly").

In assessing whether a common law reporter's privilege should be found in favor of Corsetti in this case, so as to bar a finding of contempt, it is important to note precisely what Corsetti claims and what he cannot claim.  He has written a newspaper article, bearing his by-line, disclosing information and its source.  He is not, therefore, asserting a privilege to protect the undisclosed source of information set forth in the newspaper article.  Nor does he claim that the judge ordered him to disclose information not appearing in the newspaper article, information as to which he might have made a promise of confidentiality.  He claims rather that we should recognize a common law right not to force him to break his promise to Kopacz not to disclose information in a criminal prosecution of Kopacz, although the source (Kopacz) and the content of Kopacz's statements have already been made public.

Corsetti's claim thus is that, balancing the public interest in the use of his testimony against his claim that compulsory disclosure will impede the free flow of information, we should come down on the side of the reporter.  The issue is whether such a promise should give rise to a privilege. Corsetti argues that if such a promise does not create a privilege, people such as Kopacz will not be willing to talk freely

---

[6] We note in passing that the privilege asserted by Corsetti is his own, while that asserted as a result of other relationships, such as priest-penitent or attorney-client, is that of a person seeking professional assistance.

with reporters. We are aware of no case or statute that has acknowledged a privilege in a reporter, by agreement with his disclosed source, to regulate the use of information made public. Where the source is disclosed and the testimony sought from the reporter concerns information already made public, the State's interest in the use of that information overrides the reporter's claim that the use of that information should be restricted. This is not a case where the Commonwealth has used a reporter to obtain an indictment or to do its investigative work. We see no justification in permitting a person, such as Kopacz, to determine to make information public in his name and yet impose a condition on the use of that information. A reporter has no common law privilege to be used in this manner.

*Summary contempt.* Shortly after Corsetti refused to answer the question put to him, he was summarily adjudged in contempt of court pursuant to Mass. R. Crim. P. 43, 378 Mass. 919 (1979).[7] Corsetti claims that a summary proceed-

---

[7] Rule 43 of the Massachusetts Rules of Criminal Procedure states: "(a) AVAILABILITY OF SUMMARY PROCEEDINGS. A criminal contempt may be punished summarily when it is determined that such summary punishment is necessary to maintain order in the courtroom and:

"(1) the contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court;

"(2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and

"(3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars.

"(b) NATURE OF THE PROCEEDINGS. Before making a judgment of contempt and imposing punishment, the presiding judge shall give the contemnor notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment. If the judge then determines that the sentence he would impose may be in excess of three months imprisonment or a fine of five hundred dollars, he shall bind the contemnor over for trial to be held in accordance with rule 44. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based and shall be signed by the judge and entered on the record. Where the interests of orderly courtroom procedure and substantial justice require, the presiding judge may defer imposition or execution of sentence until after the trial is completed.

"(c) APPEAL. The contemnor's only right of appeal shall be to the Appeals Court."

ing was improper because such punishment was not "necessary to maintain order in the courtroom."[8] Mass. R. Crim. P. 43 (a), 378 Mass. 919 (1979). We do not agree.

We observe first "[s]ummary punishment always, and rightly, is regarded with disfavor." *Sacher* v. *United States*, 343 U.S. 1, 8 (1952). In fact, because the due process guaranties of notice and hearing are fundamental to our system of justice, see, e.g., *Groppi* v. *Leslie*, 404 U.S. 496, 502 (1972), "many of the due process safeguards available in criminal proceedings should apply to a contempt proceeding." *Sussman* v. *Commonwealth*, 374 Mass. 692, 696 (1978). See *Garabedian* v. *Commonwealth*, 336 Mass. 119, 124-125 (1957). One such safeguard is the rule that a criminal statute must be strictly construed. See J.R. Nolan, Criminal Law § 7 (1976). Likewise, this rule providing for summary judgment of criminal contempt must be given a narrow construction. See *Widger* v. *United States*, 244 F.2d 103, 107 (5th Cir. 1957).

However, in this case, Corsetti was not taken by surprise. Approximately one year prior to this, on March 24, 1980, Corsetti was held in contempt by a Superior Court judge for his refusal to answer certain questions put to him before a grand jury that was investigating the Barbre murder for which Kopacz was eventually indicted. His claim then, as now, was a reporter's privilege. On appeal, a single justice of this court transferred the case to the full court. The case was dismissed as moot on October 15, 1980, because the term of the grand jury which had summoned Corsetti had expired. *Corsetti* v. *Commonwealth*, 381 Mass. 778 (1980). He was given a full and fair hearing in the present case. Argument of Corsetti's counsel covers approximately six pages of transcript.

The first requirement that must be in place to allow a summary contempt judgment is that "such summary pun-

---

[8] Corsetti does not claim that there was any error with respect to the conduct of the summary proceeding but only to the invocation of the summary proceeding itself. See Mass. R. Crim. P. 43 (b), 378 Mass. 919 (1979).

ishment is necessary to maintain order in the courtroom."[9] Mass. R. Crim. P. 43 (a). See *Furtado* v. *Furtado*, 380 Mass. 137, 140 n.3 (1980). The narrow question before us, therefore, is whether the respectful refusal, based upon a faulty claim of privilege, to answer a question put to a witness in a pretrial hearing, is such as to disrupt order in the courtroom. We hold that, in the circumstances of this case, it is disruptive.

Summary contempt should be used only when the contemptuous behavior constitutes a threat that immediately imperils the administration of justice. *Opinion of the Justices*, 314 Mass. 767, 784 (1943). See *Nottingham* v. *Cedar Waters, Inc.*, 118 N.H. 282, 285-286 (1978). Thus, where time is not of the essence, summary contempt proceedings are inappropriate. See *United States* v. *Wilson*, 421 U.S. 309, 319 (1975); *Harris* v. *United States*, 382 U.S. 162, 164 (1965). Time, in the circumstances of this case, was essential because the refusal of the witness to answer a question could delay interminably the trial of a case. This delay imperils the efficient administration of justice.[10]

Politeness of the witness as here demonstrated does not immunize the witness from contempt. In *Wilson*, the Court stated, "Rule 42 (a) was never intended to be limited to situations where a witness uses scurrilous language, or threatens or creates overt physical disorder and thereby disrupts a trial. All that is necessary is that the judge certify that he 'saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court.'" *Id.* at 315. Further, in *Wilson*, the Court said:

---

[9] This language is absent from the Federal rule. Fed. R. Crim. P. 42 (a).

[10] We note that Corsetti's refusal to testify occurred on March 11, 1981. Kopacz had already moved for a speedy trial and the judge stated that the trial was expected to begin as soon as Kopacz's motion to suppress was concluded. If a full trial had been afforded Corsetti and if he had been convicted and appealed, Kopacz's trial would have been greatly delayed or the Commonwealth would have been denied evidence to which it was entitled. Corsetti's refusal to testify, with the resultant scenario, certainly imperiled the efficient administration of justice.

"The refusals were contemptuous of judicial authority because they were intentional obstructions of court proceedings that literally disrupted the progress of the trial, and hence the orderly administration of justice. . . . [The defendant's refusal to testify] impeded the due course of . . . [the] trial perhaps more so than violent conduct in the courtroom. Violent disruptions can be cured swiftly by bodily removing the offender . . . and the trial may proceed. But as this case demonstrates, a contumacious refusal to answer not only frustrates the inquiry but can destroy a prosecution. . . . [T]he same kind of contumacious conduct could, in another setting, destroy a defendant's ability to establish a case. The face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding . . . summary contempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify." *Id.* at 315-316. Although *Wilson* was decided under Fed. R. Crim. P. 42 (a), which is somewhat different from our rule 43, the language is nonetheless pertinent. Hence, a contumacious refusal to answer, though laced with a measure of urbanity, is nonetheless contemptuous conduct in the presence of the court.[11] However our application of the rule of summary contempt is narrow and is limited to the special facts of this case, where there is no claim of prejudice as to the adequacy of the notice, the opportunity to defend the charge, or the fullness of the hearing.

The alternative to summary contempt is the procedure delineated in Mass. R. Crim. P. 44, 378 Mass. 920 (1979), which calls for prosecution either by complaint or indictment. This procedure is not only disruptive of the orderly presentation of a case like the present one and unnecessarily

---

[11] We are not, of course, addressing the issue of the disposition of such a refusal based on the Fifth Amendment privilege against self-incrimination. We note, however, that we give wide latitude to persons claiming privilege under the Fifth Amendment in order to give meaning to the privilege.

dilatory but it serves no useful purpose for either the witness (defendant) or for the Commonwealth.

Accordingly, we perceive no error in the proceedings in the trial court adjudging Corsetti guilty of contempt.

*Judgment affirmed.*