COMMONWEALTH vs. ALICIA L. CARR
(and a companion case[1]).

No. 93-P-254.

Suffolk. June 7, 1994. - February 28, 1995.

Present: BROWN, KASS, & GREENBERG, JJ.

*Contempt. Practice, Criminal,* Contempt.

Where a trial judge did not warn two prospective witnesses that their fail-
ure to appear at trial as ordered would amount to contempt of court for
which they could be fined or imprisoned, the judge's adjudications of
contempt for the witnesses' subsequent failure to appear could not
stand. [181]

Summary contempt proceedings under Mass.R.Crim.P. 43 were improper
for witnesses' failure to appear at trial after having been ordered to do
so by the judge; rather, proceedings by complaint or indictment under
Mass.R.Crim.P. 44, and heard by another judge, would be appropriate
in circumstances of witnesses' nonappearance. [182-183]

ADJUDICATIONS of contempt in the Superior Court De-
partment by *Elbert Tuttle,* J., on July 13, 1992.

*Cindy Ellen Hill* for Alicia L. Carr.

*Bruce W. Carroll* for the juvenile.

*Lucy A. Manning,* Assistant District Attorney, for the
Commonwealth.

BROWN, J. This appeal concerns contempt proceedings ini-
tiated by a judge against two individuals who were to be wit-
nesses at a murder trial. The question presented is whether
the conduct of the defendants warranted a finding of
contempt.

---

[1]Commonwealth *vs.* A Juvenile (No. 2). In what is perhaps an
abundance of caution in this case, we avoid using the second defendant's
(the juvenile's) name to protect her identity. See *Doe* v. *Commonwealth,*
396 Mass. 421, 423 (1985).

The facts are as follows. On July 7, 1992, prior to jury empanelment in a criminal case against one Michael Driggers, the prosecutor requested that the judge recognize two witnesses in order to insure that they would return to court to testify the following day. The judge inquired of the defendant Carr if she was willing to appear the following day, and she responded affirmatively. The judge then made similar inquiry of the juvenile defendant, to which she replied "Hell, no." Thereupon, the judge told the juvenile that he was requiring her to appear and that he could put her in custody overnight if she refused. The defendants were then requested to swear to the effect that they would recognize to the sum of $100 personal surety for their appearance the next day. The judge stated that "this is a serious matter" but did not otherwise allude to possible consequences for failure to appear.

The defendants did not appear for trial on July 8, and a capias was issued for each.[2] The case in which they were to testify proceeded until July 10, 1992, at which time a guilty plea was tendered and accepted. That same day, the juvenile and Carr appeared in court voluntarily. The capias writs had not been served.

The judge inquired of the assistant district attorney if he wished to proceed against the defendants for contempt, and he indicated that he did. The judge then placed both defendants in custody pending a bail hearing. On July 13, 1992, a hearing on the contempt was held before the same judge pursuant to the summary contempt procedure under Mass.R.Crim.P. 43, 378 Mass. 919 (1979). Counsel for both defendants at this point objected to proceeding under that rule.

---

[2]On July 8, 1992, the judge was informed that either the juvenile or Carr had contacted Attorney Joshua Dohan of the Committee for Public Counsel Services for advice pertaining to appearing in court; he advised them that they were required to appear, that they could request an attorney, and that they could then seek advice with regard to their self-incrimination rights. In a separate proceeding, Mr. Dohan was held in contempt for refusing to divulge the names and phone numbers of the persons who contacted him. Those charges were ultimately dismissed.

Appearing for the Commonwealth were two police officers who testified about their attempts to serve the capias writs. The juvenile and Carr also testified that they did not appear in court because they feared for their lives. At the conclusion of argument by counsel, the judge made findings relative to the proceedings, including the inability of the police to locate the defendants. He indicated that he thought the guilty plea in the case in which the defendants were to testify was directly related to the nonappearance of the defendants at the trial. The judge cited as explicit acts of contempt the defendants' "attitude toward the judge and, in the case of [the juvenile], by other direct refusal to answer simple questions that are relevant to the issues involved in the case."

Finally, the judge deemed the defendants' failure to appear as sufficiently disruptive of the ongoing proceeding to warrant summary contempt proceedings. The judge read his findings into the record and issued a written adjudication of contempt. Each defendant was sentenced to three months' confinement, with both sentences stayed pending appeal.

1. As a preliminary matter, the trial judge must warn individuals that they are in danger of being charged with contempt of court before contempt rules may be invoked. See *Sussman* v. *Commonwealth*, 374 Mass. 692, 697, 700 (1978). Here, no prior warnings were given to either of the defendants that her failure to appear as ordered would amount to contempt of court for which she could be fined or imprisoned. Contrast *Commonwealth* v. *Corsetti*, 387 Mass. 1, 7 (1982) (the witness "was not taken by surprise"). A careful reading of the transcript reveals that, in fact, the defendants were neither told of the significance of being recognized as a witness nor warned of the consequences of failure to appear.

Because of the absence of a proper warning, the adjudication of contempt cannot stand. *Sussman* v. *Commonwealth, supra* at 701.[3]

---

[3]We also note that when the defendants were first in court on July 7, the juvenile was not accompanied by a parent, legal guardian, or attorney. Although from this there appears to be some merit to the argument that the

2. We add the following. The circumstances of this case did not warrant contempt proceedings under the summary procedures of Mass.R.Crim.P. 43, as determined by the judge. Instead, assuming there had been a proper warning that the defendants' nonappearance would place them in contempt, contempt proceedings in this case should have been pursued under Mass.R.Crim.P. 44, 378 Mass. 920 (1979), which first requires a complaint or indictment and is to be tried before a judge other than the one before whom the contumacious acts occurred "whenever the nature of the alleged contemptuous conduct is such as is likely to affect the trial judge's impartiality."

While a trial judge has the inherent power to punish contumacious conduct, rule 43 permits a judge to punish such conduct *summarily* only when, to quote from the rule, "such summary punishment is necessary to maintain order in the courtroom." Viewed as a whole,[4] the rule provides that "[s]ummary contempt should be used only when the contemptuous behavior constitutes a threat that immediately imperils the administration of justice. Thus, where time is not of the essence, summary contempt proceedings are inappropriate." *Commonwealth* v. *Corsetti*, 387 Mass. at 8 (citations omitted). See also *Sussman* v. *Commonwealth*, 374 Mass. at 700. The underlying case in which the defendants were to testify had been concluded; there was no immediacy: time was not of the essence. See and compare *Commonwealth* v. *Segal*, 401 Mass. 95, 98-99 (1987). See also Reporters' Notes to Mass.R.Crim.P. 43, Mass. Ann. Laws, Rules of Crim. P. at 595 (Law. Co-op. 1979) ("when the adjudication of contempt is delayed until after the contemptuous conduct

---

finding of contempt on her part was further tainted by the absence of protections under G. L. c. 119, § 55, we need not address the argument because of the result we reach.

[4] In addition to other restrictions discussed above, the availability of summary contempt is limited by rule 43 to situations in which "(1) the contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court; (2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and (3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars."

has occurred, summary disposition is improper"); *In re Lamson*, 468 F.2d 551, 552 (1st Cir. 1972) (summary proceedings not available when alleged contemptuous conduct is nonappearance of witness).

The judgments are reversed; the findings of contempt are set aside; judgment is to enter for the defendants.

*So ordered.*