COMMONWEALTH vs. DENNIS MALLEY.

No. 96-P-569.

Middlesex. April 10, 1997. - June 10, 1997.

Present: WARNER, C.J., SMITH, & LAURENCE, JJ.

*Contempt. Practice, Criminal,* Contempt proceeding, Assistance of counsel.

On the record of a criminal proceeding, the judge gave the defendant suf-
ficient warning that if he continued to refuse to cooperate he would be
found in contempt of court and, in any event, the defendant's statements
demonstrated that he was aware that incarceration could follow should
he continue his course of conduct. [-810]
On the record of a criminal proceeding, the judge did not err in proceeding
with a summary contempt hearing in order to maintain order in the
courtroom, in light of the defendant's contemptuous conduct in the
presence of the presiding judge; further, the judgment of contempt
entered upon the occurrence of the contemptuous conduct and the
sentence was properly within the time parameters specified in Mass. R.
Crim. P. 43(a). [810-812]
There was no merit to the contention of a criminal defendant found in
summary contempt for refusal to proceed to trial either with or without
his appointed counsel, that his counsel was ineffective and thereby
deprived him of substantial grounds of defense. [812-813]

ADJUDICATION of contempt in the Ayer Division of the
District Court Department by *Peter J. Kilmartin,* J., on
August 1, 1994.

*Mark R. Meehan* for the defendant.

*Lincoln S. Jalelian,* Assistant District Attorney, for the
Commonwealth.

SMITH, J. The defendant appeals from a judgment of
contempt entered in District Court. We affirm.

On July 5, 1994, the defendant, Dennis Malley, was
charged with two counts of assault and battery by means of a
dangerous weapon, two counts of assault and battery upon a
police officer and one count of trespass. On July 11, 1994, the
court appointed Donald Pearlman counsel for the defendant

and the matter was continued to August 1, 1994, for trial before a jury of six in the Ayer District Court. The defendant was released on bail.

On August 1, 1994, at the beginning of the proceedings, Mr. Pearlman informed the judge that the defendant would not sign a waiver of counsel form and had fired him. The defendant told the judge that he didn't really want to fire Mr. Pearlman, but alleged that Mr. Pearlman had failed to contact a witness who was needed for trial. The judge denied the defendant's request to allow Mr. Pearlman to withdraw and reminded him that during his last court appearance, he was told to have his witnesses at trial on August 1. In response to the judge's statement that Mr. Pearlman was to continue to be his attorney, the defendant responded, "No, he's not. I don't think he's doing his job." The judge then informed the defendant of his right to represent himself, to which the defendant responded, "You can hold me in custody, anything you want. But, I'm not going to trial without a lawyer. And he ain't doing his job."

The judge and the defendant discussed the potential disposition of the case by way of guilty pleas. During this discussion, the judge asked the defendant to "keep quiet" because the defendant kept interrupting him. Despite this admonishment, the defendant continued to interrupt the judge, and at one point he remarked, referring to the proceedings, "I mean, this is Mickey Mouse." The defendant asked to speak with his attorney and then stated that he could not admit to assault and battery on a police officer. Consequently, the judge told the defendant that his trial would be held, that he would be given time to speak with his lawyer, and that the jurors would be brought into the courtroom "in a minute." The defendant said "okay," and the court took a fifteen minute recess.

When court reconvened, Mr. Pearlman told the judge that the defendant was adamant about his desire not to have him as counsel. The judge repeatedly asked the defendant whether he wanted to represent himself or have Mr. Pearlman be his attorney. The defendant responded that he wanted another lawyer, and that his civil rights were being violated. He fur-

ther stated, "I don't care. Put me in Cambridge, I don't care."[1] The following exchange then took place:

THE COURT: "What?"

THE DEFENDANT: "Put me in Cambridge. Hold me until I get another lawyer."

THE COURT: "You're not going to have another lawyer, Mr. Malley. Do you want Mr. Pearlman?"

THE DEFENDANT: "It's not right, though."

THE COURT: "Do you want Mr. Pearlman to represent you, or do you want to represent yourself?"

THE DEFENDANT: "Nope. Nope."

THE COURT: "Which one?"

THE DEFENDANT: "I'll represent myself."

THE COURT: "Alright. Then you can sign a waiver of counsel form indicating — "

THE DEFENDANT: "Alright, can I file a motion to get my witnesses in here?"

THE COURT: "I'm not going to continue the case. The case is going to go forward now."

THE DEFENDANT: "That's bullshit! Take me downstairs.[2] I'm sick of this."

THE COURT: "Just have a seat."

THE DEFENDANT: "Nope. Just get me the hell out of here. This is bullshit. I don't care. I've been getting screwed every time I come over here."

The judge then told the defendant, "If you're not going to cooperate, then I'm going to have you taken downstairs —." However, he was unable to finish his statement because the defendant interrupted him stating, "I want a new lawyer." The judge again told the defendant he was not going to give him a new lawyer and the defendant responded, "We'll see what the higher court says. Take me to Cambridge. I can get a lawyer down there." The defendant told the judge that he did not want to have the trial and repeated that he had the right to get another lawyer.

---

[1]By referring to "Cambridge" we assume the defendant was referring to the jail located there.

[2]At argument, both counsel agreed that when the defendant said, "[T]ake me downstairs," he was referring to the holding cells located in the courthouse.

The judge then stated the following:

> "How much time is it going to take you to get another lawyer? What I am going to do is hold a hearing as to whether or not you're in contempt. And the only way you're going to get yourself out of being in contempt is to start behaving and cooperate. So, what I am going to do is have you taken downstairs with the Court Officer, and I'll put the case over if you're not going to cooperate, and if you want to get another lawyer between now and then, that's fine. If you don't, then I'll set it down [*sic*] a date convenient for you and Mr. Pearlman. But either you're going to cooperate or you're not going to cooperate. I'm not going to have this made into a spectacle by your fooling around."

The defendant replied, "I'm not fooling around, . . . [w]ell, who knows — I told him who the witness was. Why ain't she here?" The judge responded:

> "So, I'll have you taken downstairs with the Court Officer, and I'll continue this to another date when it's convenient for you and Mr. Pearlman. In the meantime, if you decide you want to have a trial and have Mr. Pearlman represent you today, that's fine, or if you decide you want to represent yourself, that's fine. And we'll call the case again in about fifteen minutes. So, why don't you go downstairs with the Court Officers, now. And Mr. Pearlman can come down and talk to you."

When court reconvened, the judge stated, "As I told you before, I'm going to hold a hearing on contempt."[3] The judge also stated that, "Rather than turn the proceeding into a farce, I had no alternative but to send the jurors home, so there are no jurors here."

The defendant again insisted on having a different lawyer. The judge informed the defendant that he was not going to appoint another lawyer for the defendant, that the defendant

[3]The defendant interrupted the judge five more times while the judge tried to explain his reasons for holding the hearing. These five interruptions all appear on one page of the transcript.

could get his own lawyer, that he was going to continue the trial date, and that if the defendant wanted to represent himself, Mr. Pearlman would be available as standby counsel to assist him in the trial. The judge also described the defendant's behavior as "completely disruptive . . . in terms of forcing us to put this trial over to another date."

The defendant indicated that he wanted Mr. Pearlman to speak on his behalf during the contempt hearing and that he also wanted the opportunity to speak for himself. Mr. Pearlman argued that he saw no reason why the defendant should be incarcerated and stated the defendant "has the privilege to represent himself if he so [chooses], and apparently he so [chooses]." Speaking on his own behalf, the defendant stated that he was concerned about his ability to obtain private counsel if he was in jail for contempt and that he was uncooperative because he could have won his case. Neither the defendant nor his counsel objected to the summary contempt proceedings.

At the end of the contempt hearing, the judge found the defendant in contempt of court "by reason of [his] conduct this morning in failing to participate in the juror selection process through [his] counsel or on [his] own, that is pro se" and sentenced him to 45 days in a house of correction. When the judge began to discuss prospective dates for a trial on the underlying offenses, the defendant again stated, "That's bullshit!"

The judge also filed a written memorandum regarding his order holding the defendant in contempt. The judge's memorandum explains the sequence of events leading up to the contempt proceeding as follows: 1) "when getting ready to bring in the jury pool for the purpose of selecting a jury, the defendant/contemnor announced that he had fired his court appointed attorney and he wanted to get another attorney"; 2) "the defendant/contemnor refused to proceed and had no valid reason not to proceed"; 3) his "assigned attorney was prepared to proceed with the jury selection process"; 4) the court then "admonished the defendant that if he further refused to participate, so that the trial could proceed in an orderly fashion the court would consider holding the defendant in contempt for his disruptive conduct, constant interruptions and refusal to participate"; 5) "the defendant/contemnor told the court to put him in jail, as he was not

going to allow the trial to proceed"; and 6) "the defendant/contemnor was warned on numerous occasions of the consequences of his actions." The judge also noted that the defendant's actions "ultimately required the jury pool and witnesses to be dismissed," and that when he allowed the defendant to address the court regarding the contempt matter, the defendant "reiterated his contempt and disrespect for the trial process and the court." The defendant's trial was rescheduled for August 30, 1994.[4]

On appeal, the defendant argues that 1) the judge erred by holding him in contempt of court because he failed to warn him of the impermissible conduct and the potential sanctions for repeated behavior; 2) the judge erred by engaging in summary contempt proceedings under Mass.R.Crim.P. 43, 378 Mass. 919 (1979), because time was not of the essence once the jury pool was dismissed and the circumstances did not warrant use of this power; and 3) he received ineffective assistance of counsel thereby depriving him of substantial grounds of defense.

1. *Failure to warn.* "As a preliminary matter, the trial judge must warn individuals that they are in danger of being charged with contempt of court before contempt rules may be invoked." *Commonwealth* v. *Carr*, 38 Mass. App. Ct. 179, 181 (1995), citing *Sussman* v. *Commonwealth*, 374 Mass. 692, 697, 700 (1978). "Except in cases of flagrant contemptuous conduct, the trial judge should not exercise the power of summary contempt in the absence of a prior warning as to the conduct which would place the offender in contempt. The nature of such warning is that it must be made clear to [the offender] that such conduct is impermissible and that specified sanctions may be imposed for its repetition." *Sussman* v. *Commonwealth*, 374 Mass. at 697.

Upon review of the record, it appears that the judge gave the defendant sufficient warning that if he continued to refuse

---

[4]The trial never went forward on August 30, 1994. The August 30, 1994, docket entry states that the "defendant refused to participate in court proceedings. Therefore defendant is found in contempt and is ordered committed to 45 days House of Correction on and after any sentence now serving or to be served. Case stands continued until November 7, 1994." On November 7, the defendant pleaded guilty to all counts.

to cooperate, he would be found in contempt of court.[5] Instead of actually cooperating or agreeing to cooperate in light of this warning, the defendant responded, "I'm not fooling around . . . [w]ell, who knows — I told him who the witness was. Why ain't she here?" The judge also gave the defendant another chance to correct his behavior during the fifteen minute recess that was taken prior to the contempt hearing.[6]

Further, the defendant's statements[7] are evidence that he was aware that incarceration would follow should he continue his course of conduct; therefore, the judge's actions did not take him by surprise because his own statements show that he had sufficient notice that his conduct was impermissible and that "sanctions may be imposed for its repetition." *Sussman* v. *Commonwealth*, 374 Mass. at 697.

2. *Summary contempt proceedings.* The defendant also claims that the judge erred by engaging in summary contempt proceedings pursuant to Mass.R.Crim.P. 43(a), 378 Mass. 919 (1979), because once the judge dismissed the jury, time was no longer of the essence. Rule 43(a) states that "[a] criminal contempt may be punished summarily when it is determined that such summary punishment is necessary to maintain order in the courtroom and: (1) the contemptuous conduct could be seen and heard by the presiding judge and was committed within the actual presence of the court; (2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and (3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars."

The judge, who the record shows was extremely patient,

---

[5]Prior to warning the defendant that he would find him in contempt of court if he continued to fail to cooperate, the judge told the defendant that if he did not cooperate and proceed with his trial, he would be held in custody.

[6]The judge's statement, "So, I'll have you taken downstairs . . . . In the meantime, if you decide you want to have a trial and have Mr. Pearlman represent you today, that's fine, or if you decide you want to represent yourself, that's fine," appears to have given the defendant one more chance to cooperate with the court. Nevertheless, the defendant did not exercise this option; instead, he continued to argue that he wanted a new lawyer.

[7]The defendant, who had already been released on bail, stated, "You can hold me in custody, anything you want. But, I'm not going to trial without a lawyer. And he ain't doing his job . . . . I don't care. Put me in Cambridge, I don't care . . . . That's bullshit! Take me downstairs. I'm sick of this."

did not err in proceeding with the summary contempt hearing. By the time the judge called a recess, the defendant had interrupted the judge on seventeen occasions, had twice asked the judge to put him in jail, had already been given one recess to discuss the case with his attorney, had shown his disrespect for the judge and the judicial process by referring to the proceedings as "Mickey Mouse" and "bullshit," and had continuously indicated that he would not go forward with the trial and would not cooperate with the court. All of these events occurred during a short period of time (the entire transcript comprises fourteen pages). Thus the facts of this case are consistent with "the standard case for summary contempt and punishment . . . of a party or witness or bystander who behaves boisterously or offensively in open court against the dignity of the court." *Commonwealth* v. *Viera*, 41 Mass. App. Ct. 206, 209 (1996).

In light of the defendant's conduct, it is clear that summary punishment was necessary in order to maintain order in the courtroom. The requirements of rule 43 were satisfied in this case because the defendant's contemptuous conduct clearly occurred in the presence of the presiding judge, the judgment of contempt entered upon the occurrence of the contemptuous conduct, and the defendant's sentence was within the time parameters specified by Mass.R.Crim.P. 43(a).

Relying on *Commonwealth* v. *Carr*, 39 Mass. App. Ct. at 182, however, the defendant claims that it was error to proceed under rule 43 because the judge dismissed the jury before conducting the contempt hearing; therefore, time was not of the essence and there was no immediacy in this case. The defendant's reliance on the *Carr* decision is misplaced. In *Carr*, the defendants failed to appear as witnesses in a criminal trial on the date specified by the court. Noting that " 'summary contempt should be used only when the contemptuous behavior constitutes a threat that immediately imperils the administration of justice,' " this court found that it was improper to proceed with summary contempt proceedings under rule 43 because the underlying case was able to proceed and had been concluded by the time the contempt proceedings were held; therefore, there was no immediacy and time was not of the essence. *Id.* at 182, quoting from *Commonwealth* v. *Corsetti*, 387 Mass. 1, 8 (1982).

In the present case, the jury venire was ready to be brought

into the courtroom to begin the juror selection process and the trial, when the defendant's conduct clearly disrupted and frustrated the scheduled proceedings. See *Commonwealth* v. *Corsetti*, 387 Mass. at 9. Thus, the defendant's conduct constituted a threat that "immediately imperil[ed] the administration of justice" because his conduct caused the court to be unable to proceed with the scheduled trial. *Commonwealth* v. *Corsetti*, 387 Mass. at 8. *Commonwealth* v. *Carr*, 38 Mass. App. Ct. at 182. The record supports the judge's finding that the defendant's actions "ultimately required the jury pool and witnesses to be dismissed"; therefore, the judge's dismissal of the venire during the recess preceding the contempt hearing did not eliminate the need for immediate action on the part of the court.[8] Because the judge did not err by engaging in summary contempt proceedings under Mass.R.Crim.P. 43(a), the judge's ruling that the defendant was in contempt of court should be affirmed.

3. *Ineffective assistance of counsel.* The defendant also claims that his counsel was ineffective, thereby depriving him of substantial grounds of defense. In support of this claim, the defendant first argues that "defense counsel was nonexistent during the morning hearing which deprived the appellant of various rights," and that counsel was ineffective because he failed to request that the judge make an inquiry into the defendant's reasons for wanting new counsel. The defendant argues that if Mr. Pearlman had made such an inquiry, summary contempt could have been averted. His argument is without merit because the defendant made his reason for wanting new counsel very clear, and after hearing his reason, the judge rejected his request.[9] It was only after the judge rejected the defendant's request for new counsel that

---

[8]It was proper for the judge to dismiss the jury because they were not needed during the contempt hearing. By holding the contempt hearing, the judge gave the defendant and his counsel an opportunity to defend or explain the defendant's conduct prior to imposing the forty-five day sentence. See *Sussman* v. *Commonwealth*, 374 Mass. at 699 (when summary proceedings are properly invoked, the contemnor is given an opportunity to defend or explain his conduct before punishment is imposed).

[9]"A defendant has no constitutional right to any particular court-appointed counsel." *Commonwealth* v. *Moran*, 388 Mass. 655, 659 (1983). "[A] defendant's request for change of appointed counsel is a matter left to the sound discretion of the trial judge, but after he has given the defendant the opportunity to articulate his reasons." *Id.* at 659.

the defendant refused to cooperate with the court, ultimately leading to the finding of contempt.

Second, the defendant argues that he was deprived of the effective assistance of counsel because requiring Mr. Pearlman to represent him during the contempt hearing created the following conflict of interest: Mr. Pearlman "either had to admit to [negligent] representation by failing to take measures to produce a witness, or argue, to his client's detriment, that [the defendant's] contention was baseless," resulting in denial of the defendant's "constitutional right to untrammeled and unimpaired assistance of counsel free from conflict of interest." Therefore, the argument continues, under the circumstances, prejudice must be presumed.

To the extent that the defendant is arguing that he was denied a substantial ground of defense in the contempt hearing because his attorney failed to admit that he did not contact the defendant's witness, the defendant's argument must fail. Any such admission by the attorney would have no bearing on the issue of the defendant's contempt of court and it would not provide the defendant with a substantial ground of defense because the contempt hearing concerned only *the defendant's conduct* in response to the judge's ruling that trial would proceed notwithstanding that the defendant's witness was not present for the trial. Therefore, any proposed admission by the attorney would be irrelevant as to the issue of the defendant's contemptuous conduct particularly in light of his continued belligerence, his use of profanity, and his persistent refusal to proceed with trial.

Finally, the defendant argues that his counsel was ineffective because at the summary contempt hearing, counsel "failed to object or argue the lack of proper warning by the judge" and "failed to object to the use of summary contempt under rule 43." Because the judge did not fail to warn the defendant and did not err by engaging in the rule 43 summary contempt proceedings, there can be no claim of ineffective assistance of counsel on these grounds.

Since the defendant has failed to articulate the existence of an otherwise available substantial ground of defense, he has failed to show that he received ineffective assistance of counsel. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

*Judgment of contempt affirmed.*

## NOTE.

The next page is purposely numbered 901. The intervening page numbers were intentionally omitted in order to make it possible to publish this material with *permanent* page numbers, thus making official citations available upon publication of the preliminary prints of these Reports.