## Commonwealth *vs.* Frederick C. Diamond.

No. 96-P-1791.

Essex. June 8, 1998. - January 7, 1999.

Present: Jacobs, Dreben, & Flannery, JJ.[1]

*Judge. Contempt. Attorney at Law,* Contempt. *Practice, Criminal,* Contempt.

A Superior Court judge inappropriately entered a judgment of summary criminal contempt for an attorney's crude, unprofessional, and vulgar remark sotto voce to opposing counsel that, in the circumstances, neither posed a threat to the orderly administration of justice, nor directly and materially disrupted the court's business; where less immediate redress was available, the finding of summary contempt was set aside. [104-107] Flannery, J., concurring.

Adjudication of contempt in the Superior Court Department by *Richard E. Welch III,* J., on September 11, 1996.

*Michael J. Traft* (*Frederick C. Diamond* with him) for the defendant.

*Cathryn A. Neaves,* Assistant Attorney General, for the Commonwealth.

Jacobs, J. After announcing the removal of a default against a party represented by the defendant in a civil action, a Superior Court judge saw the defendant lean toward opposing counsel, and heard the word "ass" spoken. Opposing counsel rose to ask the judge whether he had heard what the defendant had said. Responding to the judge's inquiries, the defendant claimed lack of recall but then stated that he told opposing counsel that he now would "get discovery up the ying-yang." Pressed further, the defendant reluctantly admitted that he had used the word "ass." The judge stated that he considered such conduct to be contemptuous and that he would hold a summary contempt

---

[1]Justice Flannery participated in the deliberation on this case and authored the concurring opinion prior to his death.

proceeding after he finished his motion list.[2] Following a hearing conducted about fifteen minutes later, the judge rejected the defendant's request to be represented by counsel, confirmed his adjudication of contempt, and ordered the defendant to pay $500.

On appeal, the defendant acknowledges that he said "if you want discovery, you're going to get discovery up the ass." He argues, however, that these words posed no threat to the orderly administration of justice and that nothing he said or did supports the use of summary contempt powers under Mass.R. Crim.P. 43, 378 Mass. 919 (1979).[3] That rule provides, in pertinent part:

> "(a) AVAILABILITY OF SUMMARY PROCEEDINGS. A criminal contempt may be punished summarily when it is determined that such summary punishment is necessary to maintain order in the courtroom and:

> "(1) the contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court;

> "(2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and

> "(3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars."[4]

"Trial judges have the inherent power to deal with contumacious conduct in the court room in order to preserve the dignity,

---

[2]There being no transcript of these events, we rely entirely on the judge's findings for factual and procedural background. The judge also found that the defendant's statement was made "in open Court, within the bar enclosure and in front of the bench, and in a tone that could be heard by others attending the motion hearing." He also stated that the statement could be interpreted as threatening, harassing, and retaliatory discovery, and warned the defendant that he would issue further sanctions if discovery procedures were to be improperly used.

[3]While no rule is cited by the judge, we construe this record as indicating that he generally adhered to rule 43. There is no contention that Mass.R. Crim.P. 44, 378 Mass. 920 (1979), governing "[a]ll criminal contempts not adjudicated pursuant to rule 43," was followed. See note 9, *infra*.

[4]The remainder of rule 43 states:

"(b) NATURE OF THE PROCEEDINGS. Before making a judgment of contempt and imposing punishment, the presiding judge shall give the contemnor notice

order, and decorum of the proceedings. [Citations omitted.] Such power is not without limitation. Unless the contempt occurs in the presence of the judge and immediate punishment is needed to prevent 'demoralization of the court's authority,' *In re Oliver,* 333 U.S. 257, 275 (1948), or to enforce 'lawful orders essential to prevent a breakdown of the proceedings,' . . . many of the due process safeguards available in criminal proceedings should apply to a contempt proceeding. [Citations omitted.] Summary punishment for direct contempt 'is warranted only when essential to the orderly administration of justice.' *Opinion of the Justices,* [314 Mass. 767,] 784 [(1943)]." *Sussman* v. *Commonwealth,* 374 Mass. 692, 695-696 (1978). "Viewed as a whole, [rule 43] provides that '[s]ummary contempt should be used only when the contemptuous behavior constitutes a threat that immediately imperils the administration of justice. Thus, where time is not of the essence, summary contempt proceedings are inappropriate.' *Commonwealth* v. *Corsetti,* 387 Mass. [1,] 8 [(1982)] (citations omitted)." *Commonwealth* v. *Carr,* 38 Mass. App. Ct. 179, 182 (1995).

There is no indication in this record that the defendant's statement to opposing counsel created an immediate peril to the administration of justice or that it directly and materially disrupted the court's business. Nowhere does the judge state that what he saw or heard at the time he heard the word "ass" caused him to conclude that the defendant's conduct was contemptuous. Only after opposing counsel reacted and the defendant responded to several inquiries did the judge conclude that contumacious conduct had occurred.

We readily agree with the judge that the defendant's statement was "crude, unprofessional," and "vulgar,"[5] but there is no indication from the record or the judge that it threatened or actually thrust the court into disorder or was violative of a

of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment. If the judge then determines that the sentence he would impose may be in excess of three months imprisonment or a fine of five hundred dollars, he shall bind the contemnor over for trial to be held in accordance with rule 44. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based and shall be signed by the judge and entered on the record. Where the interests of orderly courtroom procedure and substantial justice require, the presiding judge may defer imposition or execution of sentence until after the trial is completed.

"(c) APPEAL. The contemnor's only right of appeal shall be to the Appeals Court."

[5]We also acknowledge, as Justice Powell observed in his concurring opinion

previous warning.[6] As a general matter, "to maintain order" must be construed narrowly to guard against arbitrary imposition of penalty without due process. *Commonwealth* v. *Viera*, 41 Mass. App. Ct. 206, 208 (1996), and cases cited. "[I]n view of the heightened potential for abuse posed by the contempt power," *Taylor* v. *Hayes*, 418 U.S. 488, 500 (1974), application of rule 43 must be limited to those egregious cases where "the necessities of the administration of justice require such summary dealing with obstructions to it." *Offutt* v. *United States*, 348 U.S. 11, 14 (1954). See *In Re Gustafson*, 619 F.2d 1354, 1359 (9th Cir. 1980). "The exercise of the summary power of contempt is 'a delicate one and care is needed to avoid arbitrary or oppressive conclusions.' " *Sussman* v. *Commonwealth*, 374 Mass. at 696, quoting from *Bloom* v. *Illinois*, 391 U.S. 194, 202 (1968). The need for restraint by trial judges in the use of summary contempt powers against attorneys is underscored by the fact that the right of appeal may not seem a satisfactory safeguard to a lawyer who regularly must appear before the judge who invoked those powers against him.

Faced with courtroom incivility by an attorney that does not require immediate redress to preserve order,[7] a judge nevertheless has several options: (1) If the judge deems the conduct contumacious,[8] he may initiate or recommend a contempt proceeding under Mass.R.Crim.P. 44, 378 Mass. 920 (1979).[9]

in *Eaton* v. *Tulsa*, 415 U.S. 697, 700 (1974), "[i]t may well be, in view of contemporary standards as to the use of vulgar and even profane language, that this particular petitioner had no reason to believe that this expletive would be offensive or in any way disruptive of proper courtroom decorum. Language likely to offend the sensibility of some listeners is now fairly commonplace in many social gatherings as well as in public performances."

[6]This case does not fall within the ambit of those decisions which caution that "the trial judge should not exercise the power of summary contempt in the absence of a prior warning as to the conduct which would place the offender in contempt." *Sussman* v. *Commonwealth*, 374 Mass. at 697.

[7]We distinguish courtroom incivility from failure by an attorney to appear for trial, which may invite the imposition of costs against the attorney after he has been given notice and an opportunity to be heard. In that event, "a judge need not provide the attorney with the full panoply of rights afforded to criminal defendants" as required under Mass.R.Crim.P. 44. *Beit* v. *Probate & Family Ct. Dept.*, 385 Mass. 854, 862 (1982).

[8]"Contumacious conduct may take many forms . . . ." *Sussman* v. *Commonwealth*, *supra* at 696. "Contempt may . . . consist of an objectionable manner, speech, attitude, conduct, and tone of voice in the court room." *Albano* v. *Commonwealth*, 315 Mass. 531, 535 (1944).

[9]Rule 44 provides:

"(a) NATURE OF THE PROCEEDINGS. All criminal contempts not adjudicated

See *Commonwealth* v. *Viera*, 41 Mass. App. Ct. at 209 ("when [the] element of urgency or immediacy is absent, the lawful procedure, assuming some plausible charge of contempt, is to go under rule 44 and proceed more deliberately, with customary procedural safeguards familiar to ordinary criminal trial"). If the judge wishes to impart the lesson to other attorneys present, he may also announce in open court that he intends to cite the offender for contempt. (2) In addition to, or in lieu of a rule 44 proceeding, "a judge may refer conduct which violates the Code of Professional Responsibility to the Board of Bar Overseers for disciplinary action." *Beit* v. *Probate & Family Ct. Dept.*, 385 Mass. 854, 861 n.13 (1982).[10] (3) Also, a judge may deliver a public or private admonition, combined in the judge's discretion with a warning, cautioning that repetition would be grounds for contempt proceedings. See *Sussman* v. *Com-*

pursuant to Rule 43 shall be prosecuted by means of complaint, unless the prosecutor elects to proceed by indictment. Except as otherwise provided by these rules, the case shall proceed as a criminal case in the court in which the contempt is alleged to have been committed.

"(b) Special Provisions for District Court. The District Court shall have jurisdiction to try all contempts committed therein except those prosecuted by indictment. Whenever a contemnor asserts his right to a jury trial in District Court, the trial shall be held before a jury in District Court. The contemnor's only right of appeal shall be to the Appeals Court.

"(c) Disqualification of the Judge. The contempt charges shall be heard by a judge other than the trial judge whenever the nature of the alleged contemptuous conduct is such as is likely to affect the trial judge's impartiality."

[10]The judge in this case expressed the view "that such phrases and words as used by [the defendant] have absolutely no place in a court proceeding and are contrary to [his] professional obligation to behave in a dignified and courteous manner while before a judicial tribunal." The judge cited S.J.C. Rule 3:07, DR 7-106(C), 382 Mass. 787 (1981), which states: "In appearing in his professional capacity before a tribunal, a lawyer shall not: . . . (6) Engage in undignified or discourteous conduct which is degrading to a tribunal." He also stated that the defendant violated DR 7-102(A), 382 Mass. 785 (1981) ("[i]n his representation of a client, a lawyer shall not: . . . (5) Knowingly make a false statement of law or fact"), by giving a false response to his questioning of what the defendant actually said to opposing counsel.

Effective January 1, 1998, new Rules of Professional Conduct were promulgated at 426 Mass. 1302 (1998). We observe that two of these new rules parallel DR 7-106(C)(6). Mass.R.Prof.C. 3.5, 426 Mass. 1391 (1998), provides: "A lawyer shall not: . . . (c) engage in conduct intended to disrupt a tribunal." Mass.R.Prof.C. 8.4, 426 Mass. 1429 (1998), provides: "It is professional misconduct for a lawyer to: . . . (d) engage in conduct that is prejudicial to the administration of justice . . . ."

*monwealth*, 374 Mass. at 697, 700.

In the circumstances, the use of summary contempt proceedings was not warranted.

> *The judgment is reversed and the finding of summary contempt is set aside.*

FLANNERY, J. (concurring). I concur in the result reached by the majority. The only reason the defendant's obnoxious conduct was not summary contempt was that it was not disruptive of the proceedings and not an insult directed at the judge.