## Commonwealth *vs.* Timothy Wiencis.

No. 98-P-1634.

Plymouth. December 8, 1999. - March 2, 2000.

Present: Kass, Greenberg, & Beck, JJ.

*Intimidation of Witness. Witness,* Intimidation. *Practice, Criminal,* Required finding, Contempt proceeding. *Contempt.*

At the trial of allegations of violations of G. L. c. 268, § 13B, intimidation of a witness, the exact nature and outcome of the underlying "criminal proceeding" was not an element of the Commonwealth's case. [689-691]

In a criminal proceeding, summary contempt and punishment pursuant to Mass.R.Crim.P. 43(a) was an appropriate course of action for a District Court judge, based upon the defendant's flagrant contemptuous conduct in the presence of the judge and jury. [691-692]

COMPLAINTS received and sworn to in the Wareham Division of the District Court Department on August 15, 1997.

The cases were tried before *James M. Quinn,* J., and an adjudication of contempt was made by him.

*Mark F. Roberts* for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Timothy Wiencis confronted several persons at the Wareham District Court and showed a splendid ability to nurse a private dispute into a public battle. As a result, he was found guilty of two complaints of intimidating a witness, G. L. c. 268, § 13B, and given ten days in jail for contempt of court. Wiencis has appealed.

Evidence taken in a light most favorable to the government, *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976), provides context for our analysis. On July 29, 1997, three witnesses (Maurice Lashley, Judith Burns, Valerie Navaro) scheduled to testify against Wiencis in a criminal case gathered in the lobby of the Wareham courthouse. After checking with the prosecutor's

office, they waited outside the first session courtroom for the case to be called. Wiencis arrived in the courthouse, approached Burns and said, "Everybody that's here today is gonna to pay." Lashley warded him off and threatened to call a court officer. Faced with that prospect, Wiencis said, "I don't give a fuck. Do whatever you want."

As Lashley headed toward the door of the first session courtroom in search of assistance, Wiencis followed and said in an angry tone, "You're going to be sorry if you fuck with me." Later, the three witnesses sat on one side of the courtroom, opposite Wiencis. Lashley saw Wiencis staring at Navaro and mouthing the words, "Watch out, Val." It was repeated three times before Navaro left the room in tears. The case was not reached for trial and was adjourned to another date. While all parties were in the lobby to await the setting of another trial date, there was another flare-up. Standing toe-to-toe with Lashley, Wiencis said, "Come on, let's go right now, me and you. There is nobody here." When a court officer reappeared, Wiencis walked away. Wiencis was eventually acquitted following a trial.

On these facts, a jury of six convicted Wiencis of intimidation of Lashley and Burns. As the session clerk read the verdicts in open court, Wiencis, with hands clenched into fists, twice screamed at the jury, "How could you do this?" With admirable aplomb, the judge ordered the jury into an adjacent room. He calmed the defendant and admonished him for the outburst. The defendant apologized and promised to behave himself.

The jury were brought back into the courtroom to be discharged. The judge expressed gratitude for their service, and said that he would shortly meet with them in the jury room. As the jury filed past the defendant, he again lost control. Ignoring trial counsel's plea to desist, Wiencis told the jury that Lashley would smash their cars and stalk them. The judge warned him that he had the power to curb such outrageous behavior by holding him in contempt. After the jury left, Wiencis continued angry disputation with the judge despite further warnings by trial counsel to be quiet. Ultimately, the judge could endure no more and told Wiencis that he was imposing a ten-day jail sentence for contempt of court, the first time in a nine-year career on the bench that he was required to do so.

1. *Motion for a required finding of not guilty.* The language of G. L. c. 268, § 13B, the so-called witness intimidation

statute, "has two distinct branches — a 'witness' branch and a 'furnishing information' branch."[1] *Commonwealth* v. *Belle Isle*, 44 Mass. App. Ct. 226, 228 (1998), citing *Commonwealth* v. *Burt*, 40 Mass. App. Ct. 275, 278 (1996). The portion of § 13B on which the defendant especially relies requires proof of intimidation of a witness, "in any stage of a trial . . . or other criminal proceeding." The defendant proposes a technical argument that the government's proof of an ongoing criminal proceeding was insufficient as matter of law. He points out that evidence of the content and outcome of the trial at which Burns and Lashley were witnesses was erroneously excluded by the trial judge in this case. Therefore, he argues that the government failed to establish an essential element of the crimes charged. In the defendant's view, this gap — evidence of the trial or other proceedings in which the alleged victims were witnesses — left the government's case resting on nothing more than impermissible inferences (guesswork that Lashley and Burns were in the courthouse on some business related to him). Thus, the defendant concludes he was entitled to the entry of a required finding of not guilty.

The point is governed — adversely to Wiencis — by *Commonwealth* v. *Orton*, 4 Mass. App. Ct. 593 (1976). Orton stood trial for trying to intimidate a government witness who claimed to have seen one O'Brien, a fellow employee, steal frozen scallops from Commonwealth Pier in Boston. During Orton's trial for violation of G. L. c. 268, § 13B, he sought to introduce evidence that O'Brien had been acquitted on the larceny charge. The trial judge excluded that evidence. We said that "[t]here was no error in excluding the offered testimony, as the outcome

---

[1] The first paragraph of the statute reads as follows:

"Whoever, directly or indirectly, willfully endeavors by means of a gift, offer or promise of anything of value or by misrepresentation, intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial, grand jury or other criminal proceeding or with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth, and whoever injures any person or damages his property on account of the giving of such information to a criminal investigator or on account of testimony given at a trial, grand jury or other criminal proceeding, shall be punished . . . ."

of the O'Brien trial was irrelevant to the issues in the case then before the court." *Id.* at 595. The "question to be resolved . . . was whether the defendant's acts and statements had been performed and uttered in order to influence the [witness's] testimony in the then upcoming trial." *Ibid.*

Similarly, in this case, Burns testified that she was summoned to appear as a witness in a case at the Wareham District Court in which Wiencis was the defendant. Wiencis's attempts to discourage both Burns and Lashley from testifying occurred prior to the acquittal of Wiencis upon the charges against him. The government did not have to prove the exact nature of the criminal proceedings, and indeed, the judge had discretion to exclude the verdict in the underlying case. The evidence at trial, summarized above, was sufficient to allow the jury to infer that the defendant, by intimidation, impeded or interfered with a witness in an ongoing criminal proceeding.

2. *Summary contempt proceedings.* Wiencis also claims that the judge's resort to summary contempt proceedings pursuant to Mass.R.Crim.P. 43(a), 378 Mass. 919 (1979),[2] was error because the jury had been dismissed, time was not of the essence, and less severe measures were called for. There is nothing to these arguments. "[T]he facts of this case are consistent with 'the standard case for summary contempt and punishment . . . of a party or witness or bystander who behaves boisterously or offensively in open court against the dignity of the court.' " *Commonwealth* v. *Malley*, 42 Mass. App. Ct. 804, 811 (1997), quoting from *Commonwealth* v. *Viera*, 41 Mass. App. Ct. 206, 209 (1996). When, as here, the flagrant conduct occurred in the presence of the judge and jury, discretion to use summary contempt procedures to maintain order rests squarely with the

---

[2]Rule 43(a), which applies to all district courts, permits summary contempt to be employed in limited situations: "A criminal contempt may be punished summarily when it is determined that such summary punishment is necessary to maintain order in the courtroom and: (1) the contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court; (2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and (3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars." The Supreme Judicial Court has additionally required that unless the conduct was "flagrant" a prior warning is a prerequisite. *Sussman* v. *Commonwealth*, 374 Mass. 692, 697 (1978). See *Commonwealth* v. *Malley*, 42 Mass. App. Ct. 804, 809 (1997). Absent any one of these requirements, the more extensive procedures described in Mass.R.Crim.P. 44, 378 Mass. 920 (1979), are necessarily triggered.

judge. *Commonwealth* v. *Malley*, 42 Mass. App. Ct. at 810-811. There is no doubt that the judge took action immediately after the offending conduct. See *Groppi* v. *Leslie*, 404 U.S. 496, 502-506 (1972); *Codispoti* v. *Pennsylvania*, 418 U.S. 506, 515 (1974).

Wiencis also argues that the judge's failure to warn him that he was in danger of being held in contempt, see *Sussman* v. *Commonwealth*, 374 Mass. 692, 697-700 (1978), invalidates the order. The *Sussman* formulation excepts from the "warning" requirement "cases of flagrant contemptuous conduct," *id.* at 697, and permits the judge to take immediate action in those rare situations where "immediate punishment is needed to prevent 'demoralization of the court's authority,' " *id.* at 695, quoting from *In re Oliver*, 333 U.S. 257, 275 (1948), or to enforce "lawful orders essential to prevent a breakdown of the proceedings." *Id.* at 695-696, quoting from *United States* v. *Wilson*, 421 U.S. 309, 319 (1975). Expressed more coarsely, when the offending person is completely out of line, no warnings need be given.

A careful reading of the transcript reveals that Wiencis was twice reprimanded by the judge before the axe fell. It is clear from his comments to Wiencis that the judge did not relish resorting to an extreme sanction. He was admirably restrained until Wiencis's contumacious tirade against Lashley in the presence of the jury. Wiencis could not claim to be taken by surprise. See *Commonwealth* v. *Corsetti*, 387 Mass. 1, 9 (1982).

The judge failed to include a recital of the facts upon which the adjudication of guilt was based, or to sign such a recital and enter it upon the record. See *Commonwealth* v. *Segal*, 401 Mass. 95, 100 (1987). Such an error was pardonable in the circumstances and there was no prejudice to the defendant as a consequence.[3]

*Judgments affirmed.*

---

[3]We note that the docket entries in the District Court indicate that the court purported to act under G. L. c. 268, § 13C. However, as pointed out in the defendant's brief, any judgment entered pursuant to that statute would be void unless the defendant was first arraigned and tried under a separate complaint.