COMMONWEALTH vs. DANIEL S. BRUNNELL.

No. 05-P-44.

Worcester. October 17, 2005. - January 20, 2006.

Present: GREENBERG, BECK, & MILLS, JJ.

*Practice, Criminal,* Contempt, Contempt proceeding. *Contempt.*

Discussion of the standard of review of a summary proceeding to prosecute criminal contempt. [426-427]
Where a criminal defendant's conduct at a bail hearing (reacting to the judge's ruling by using outrageous and inflammatory language), although not immediately interfering with the business of the court, was sufficiently flagrant as to undermine the authority of the court, such conduct amounted to criminal contempt and warranted the judge's punishment of the defendant by means of summary proceedings pursuant to Mass.R.Crim.P. 43. [427-429]

INDICTMENTS found and returned in the Superior Court Department on February 13, 2004.

An adjudication of contempt was made by *John S. McCann,* J.

*David Keighley* for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Rule 43(a) of the Massachusetts Rules of Criminal Procedure, 376 Mass. 919 (1979), which applies to the District and Superior Courts, specifies the limited circumstances in which summary proceedings can be invoked to prosecute criminal contempt. The rule provides that summary proceedings (e.g., dispensing with formal charges and an evidentiary hearing) may be utilized only if the instant adjudication is necessary to maintain order in the courtroom, and (1) the contemptuous conduct occurred in the presence of a judge or the court; (2) contempt proceedings take place without delay; and (3) the

punishment imposed does not exceed three months imprisonment or a fine of $500. The Supreme Judicial Court has additionally required that unless the conduct is "flagrant," a prior warning is required as a prerequisite to treating the alleged contempt summarily. *Sussman* v. *Commonwealth*, 374 Mass. 692, 697 (1978). The absence of any one of these distinct factors renders summary proceedings unavailable, triggering the more extensive requirements described in Mass.R.Crim.P. 44, 378 Mass. 920 (1979).

Our decisions, viewed as a whole, narrowly interpret rule 43. They suggest that summary contempt should only be used when the offending "behavior constitutes a threat that immediately imperils the administration of justice." *Commonwealth* v. *Corsetti*, 387 Mass. 1, 8 (1982). See *id.* at 7, quoting from *Sacher* v. *United States*, 343 U.S. 1, 8 (1952) (observing that "[s]ummary punishment always, and rightly, is regarded with disfavor"); *Commonwealth* v. *Viera*, 41 Mass. App. Ct. 206, 208 (1996) ("exercise of the summary contempt power . . . by long tradition is conceived narrowly and used with great restraint"). Moreover, rule 43 allows summary punishment of criminal contempt only when "summary punishment is necessary to maintain or restore order in the courtroom." *Commonwealth* v. *Segal*, 401 Mass. 95, 99 (1987), quoting from Mass.R.Crim.P. 43(a). Other remedial options have been suggested. For example, where conduct is "not so disruptive as to warrant a summary contempt punishment but nevertheless interfere[s] with the efficient administration of justice, an assessment of costs may be an effective judicial option in maintaining procedural control of a court room." *Commonwealth* v. *Rogers*, 46 Mass. App. Ct. 109, 112 (1999) (reversing a criminal contempt judgment for an attorney's disappearance from a courtroom).

Against this backdrop, we sketch the undisputed episode that gave rise to a Superior Court judge's summary punishment of the defendant. On March 22, 2004, having been previously charged with assault by means of a dangerous weapon, larceny in a building, possession of burglarious tools, breaking and entering a building in the nighttime with intent to commit a felony, and receiving a stolen motor vehicle, the defendant ap-

peared in the Superior Court at Worcester for a bail hearing. As the hearing began, trial counsel told the judge that the defendant's bail, which had been set without prejudice at his arraignment in District Court, was $25,000. He outlined that the defendant, unable to raise that amount of money, had been held "down in Bridgewater," making it impossible for him to receive visits from family members. Trial counsel's familiar plea was that the defendant had had "a problem with drugs in his past" but had cleaned up his act during pretrial detention and wished to be released on $1,000 cash bail with conditions, including house arrest. Trial counsel identified the defendant's mother, who was present in the courtroom, and assured the judge that if he were to reduce the defendant's bail, she and her husband would keep the defendant under house arrest and that should he step out of line in any way, they would immediately report him to the police.

There followed a brief description by trial counsel of the defendant's involvement in the underlying case. He was a passenger in a truck that was stopped by the police on suspicion of its use as a get-away vehicle right after a break-in at a gasoline station. For his part, the prosecutor saw it differently. What accounted for the high bail was a lengthy and hazardous flight from police in the truck, which damaged several civilian vehicles along the way. In addition, a tool box was thrown from the passenger's side window of the truck at one of the pursuing officers, and there was the matter of the defendant's prior record, which included a 1993 armed robbery that had resulted in the defendant's imprisonment for six months. According to the prosecutor, that sanction failed to deter the defendant from committing the offenses in question. He cautioned that should the defendant be convicted, he would face significant jail time.

There followed a brief colloquy among the judge, prosecutor, and trial counsel concerning the possible trial date, at the conclusion of which the judge simply stated, "The petition is denied." Then came the defendant's offending remarks, "Fuck you, judge; fuck you." The judge directed the court officers to "[t]ake him out please," at which point the defendant said, "You know what, judge? You can suck my fuckin' dick." That brought an apology from trial counsel. Although not entirely

clear from the record, it appears that the defendant was taken to a holding cell adjacent to the courtroom. The discussion between trial counsel and the judge continued. The judge said, "I'm going to impose a sixty-day sentence, contempt of court, on and after any time served . . . and that's for his conduct here in court today."[1] Obviously perturbed by the incident, the judge made an oral finding that the defendant's conduct was "outrageous, disgraceful and it deserves some consequences," and he increased his bail to $50,000.[2]

1. *Standard of review*. We review the record to determine whether it supports the judge's summary contempt finding. Our cases have not explicitly set forth a standard of review. Other courts, however, have dealt with the issue. " '[A] court exercises considerable discretion in dealing with contemptuous conduct occurring in its presence, and its summary adjudication is accorded a presumption of finality,' *State* v. *Melechinsky*, 36 Conn. Supp. 547, 549 (1980). 'From necessity the court must be its own judge of contempts committed within its presence.' *Goodhart* v. *State*, 84 Conn. 60, 62-63 (1911)." *Jackson* v. *Bailey*, 221 Conn. 498, 504, cert. denied, 506 U.S. 875 (1992). Although appellate review of a summary contempt finding is limited, the reviewing court must conduct a careful examination of the record to determine whether the finding of contempt can be sustained as matter of law. See, e.g., *Codispoti* v. *Pennsylvania*, 418 U.S. 506, 517 & n.6 (1974) (noting that summary convictions "unwarranted" by facts are subject to appellate review and that, if constitutional rights are affected, the court is "duty bound to make an independent examination of the evidence in the record"). "Criminal contempt is a crime in the ordinary sense," and "convictions for criminal contempt are indistinguishable from ordinary criminal convictions." *Bloom* v. *Illinois*, 391 U.S. 194, 201 (1968). Therefore, the record or the trial judge's findings regarding the contemnor's language, gestures, or other body language must support the judge's

---

[1]While no rule was cited by the judge, we construe this record as indicating that he generally adhered to rule 43. There is no contention that Mass.R. Crim.P. 44, governing "[a]ll criminal contempts not adjudicated pursuant to rule 43," was followed.

[2]About six weeks later, the judge reconsidered and reduced the defendant's bail to $25,000.

determination that the contemnor's conduct was contemptuous beyond a reasonable doubt. See, e.g., *Moore* v. *State*, 186 Conn. 256, 258-259 (1982) (explaining that, while criminal contempt proceedings should conform as closely as possible to criminal proceedings, especially regarding the presumption of innocence and the standard of proof beyond a reasonable doubt, they need not exactly adhere to criminal proceeding and can be summary in nature).

Accordingly, in reviewing the defendant's claim that the judgment of summary contempt should be reversed on the ground that it is not supportable as matter of law, *Commonwealth* v. *Segel*, 401 Mass. at 98, it is not our function to second guess the considered judgment of the trial judge or to ignore the record before us. Rather, we will sustain the judge's contempt finding if, upon a careful review of the record, we conclude that the trial judge reasonably could have found that the plaintiff's conduct was wilfully contumacious beyond a reasonable doubt.

2. *Analysis*. We may dispose of the defendant's threshold argument without much elaboration. A warning is not a condition precedent to criminal contempt in all cases. See *Sussman* v. *Commonwealth*, 374 Mass. at 697 (noting that "flagrant contemptuous conduct" could justify the exercise of the summary contempt power without a warning). We can conceive of a wide panoply of acts that would constitute contempt of court without the necessity of a prior warning. Such acts include a "party or witness or bystander who[, as here,] behaves boisterously or offensively in open court against the dignity of the court." *Commonwealth* v. *Viera*, 41 Mass. App. Ct. at 209. *Commonwealth* v. *Malley*, 42 Mass. App. Ct. 804, 811 (1997).

Nothing in the judge's sparse findings or in the record indicates that, as a result of the defendant's verbal outburst, summary punishment was necessary to maintain or restore order in the courtroom. The real concern, however, is that the defendant's opprobrious epithets were directed toward the judge himself, who did nothing but announce his decision on the defendant's bail petition. We agree with the Commonwealth that this factor distinguishes the case from *Commonwealth* v. *Diamond*, 46 Mass. App. Ct. 103, 105 (1999), where we

reversed a contempt finding against the attorney even though his statements were "crude, unprofessional, and vulgar." In that case, Diamond leaned toward opposing counsel and, in the presence of the judge, told opposing counsel that he would "get discovery up the ass." *Id.* at 104. Diamond argued, and we agreed, that those words posed no threat to the orderly administration of justice. *Id.* at 105-106.

We conclude here that the defendant's conduct, although not immediately interfering with the business of the court, was sufficiently flagrant so as to undermine the authority of the court to constitute contempt. The defendant, in the most salacious terms, twice indicated his displeasure with the judge's ruling and with the judge himself. Under the circumstances, the judge reasonably concluded that the defendant's words constituted a wilful violation of rule 43. Neither the transcript of the proceedings nor the judge's verbal findings indicate how many persons were in the courtroom at the time of the defendant's offensive behavior. Consequently, it is not possible for us to determine the extent to which the judge may have believed that prompt action was necessary to convey to others present that a similar affront to the court's authority would not be tolerated. However, we may infer from the fact that the judge was presiding over a busy first criminal session that other defendants and their attorneys were privy to the defendant's ill-advised outburst.

In the rough and tumble of criminal court proceedings, we are not unaware of the frailties of human nature or of the emotional strain on the participants, especially of the accused. Judges must exercise restraint in using summary contempt only in cases where it is necessary to preserve the dignity and order of the court. See *In re Little,* 404 U.S. 553, 555 (1972), quoting from *Brown* v. *United States,* 356 U.S. 148, 153 (1958) ("Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice"). However, in this case, the defendant's reaction to the judge's ruling was highly inflammatory and outrageous. It is still the rule that "[c]ontempt may . . . consist of an objectionable manner, speech, attitude, conduct, and tone of voice in the court room." *Albano* v. *Commonwealth,* 315 Mass. 531, 535 (1944). See *Commonwealth* v. *Malley,* 42 Mass. App. Ct. at 811-812

(judgment of contempt affirmed where defendant had repeatedly interrupted the judge in attempting to get new counsel and the jury venire had to be dismissed, which was a clear interruption of the proceedings and a threat that "immediately imperil[ed] the administration of justice"); *Commonwealth* v. *Wiencis*, 48 Mass. App. Ct. 688 (2000) (judgment of summary contempt upheld where defendant had berated a witness and the jury and had told the jury that one of the witnesses would smash their cars and stalk them); *United States* v. *Green*, 176 F.2d 169, 172 (2d Cir. 1949) (judgment of contempt affirmed when defendant had made unsolicited remarks as a witness and snide remarks toward the bench because such behavior, if allowed to continue unchecked, would cause a disruption of court proceedings and flout the court's authority). Contrast *Commonwealth* v. *Contach*, 47 Mass. App. Ct. 247 (1999) (judgment of contempt reversed where defendant made an obscene gesture toward a former boyfriend that was not directed to the judge, and where there was no real disruption of court proceedings). Here, the defendant's words were so offensive to the dignity and authority of the court as to be contemptuous.

*Judgment affirmed.*