COMMONWEALTH *vs.* JAALA NICHOLAS.[1]

No. 08-P-822.

Suffolk. January 8, 2009. - April 30, 2009.

Present: KANTROWITZ, KAFKER, & MEADE, JJ.

*Contempt. Practice, Criminal,* Contempt, Contempt proceeding.

A Superior Court judge erred in employing the summary contempt procedure set forth in Mass.R.Crim.P. 43, 378 Mass. 919 (1979), to hold the defendant in criminal contempt, rather than the formal contempt procedure set forth in Mass.R.Crim.P. 44, 378 Mass. 920 (1979), where the judge did not see or hear the conduct that created the disturbance in the court room. [166-171]

ORDER of notice to appear and show cause filed in the Superior Court Department on October 24, 2007.

A summary contempt proceeding was heard by *Regina L. Quinlan*, J.

*David J. Nathanson* for the defendant.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. Today we hold that where the judge did not see or hear the conduct that created a courtroom disturbance, the use of summary contempt, while understandable, was nonetheless improper.

*Facts.* On October 23, 2007, the defendant, Jaala Nicholas, testified for the Commonwealth in the murder trial of Anthony Davis. At the conclusion of Nicholas's testimony, he walked toward the exit of the courtroom and made a gesture with his hand in the direction of Davis's father and brother. In response to the gesture, the father stood up and an altercation ensued. The judge promptly removed the jury from the courtroom and Boston

---

[1] This case was originally docketed in this court as *Commonwealth* vs. *Anthony Davis*. We have allowed Jaala Nicholas's motion to change the caption.

police officers arrived to quell the disruption. While the judge witnessed the fight, she did not see the gesture that had caused it.

After calm was restored, the judge conducted a voir dire. One juror testified that she had seen the defendant make his hand look like a gun, point his hand in the direction of Davis's father and brother, and say, "[P]op, pop, pop." That juror was excused.

The following day a second juror, who had not seen the gesture but was fearful of her safety, was excused. Davis's trial resumed. Sometime during that day, the judge issued an order requiring the defendant to appear and show cause why he should not be held in contempt for "making a threatening gesture to spectator(s) attending [Davis's] trial . . . thereby initiating disruption in the courtroom which threatened the fair administration of justice." The order required the defendant to attend a hearing on October 29, 2007. The defendant appeared in court as scheduled and received appointed counsel. At that time, he also received an amended order of notice to appear and show cause that rescheduled the contempt hearing for October 31, 2007.[2]

At the summary contempt proceedings on October 31, the judge asked the defendant and his counsel why she "should not impose a penalty for that conduct and that disruption, which was precipitated by the gesture that was made." In describing the incident, the judge relied upon the statement from the juror who witnessed the gesture and a report in a local newspaper.[3]

The defendant, through counsel, apologized for the incident and emphasized that it was not aimed at any court personnel or jurors. After considering the loss of two jurors and the emotional intensity of the murder trial, the judge found the defendant "in contempt of Court under Rule 43 of the Massachusetts Criminal Rules of Procedure" and sentenced him to forty-five days at the Suffolk County house of correction. After a stay, the sentence was imposed on November 16, 2007.[4] On March 18, 2008, the

[2]The jury began deliberations on October 29, 2007, and were still in deliberations on October 31.

[3]The Boston Now article, dated October 24, 2007, stated that "Michael Davis told court officers witness Jaala Nicholas pointed his finger at him like a gun as he left Room 806 and said, 'pop, pop, pop.' "

[4]The judge stayed the sentence until November 13, 2007, to allow the defendant to seek appellate review. When his motion for a stay of sentence was denied, the sentence was imposed on November 16.

defendant filed a motion to reconsider and vacate his summary contempt adjudication, arguing that "[d]ue process and the rules of criminal procedure prohibit the finding of summary contempt unless the judge personally observed the contemptuous conduct." The following day the judge denied the motion without a hearing, reasoning that she "observed the disruption precipitated by [the defendant's] departure and . . . ha[d] to excuse two sitting jurors who were compromised by having seen the gesture precipitating the disruption." The defendant timely appealed the denial of his motion.

The defendant sets forth several arguments on appeal, only one of which we need address. He argues that because due process and Mass.R.Crim.P. 43, 378 Mass. 919 (1979), prohibit summary contempt unless the judge personally observed the contemptuous conduct, the judge erred in basing the summary contempt finding on a juror's observation and a newspaper article, instead of on her own observation.[5]

*Contempt.* "Longstanding precedent confirms the power of courts to find summary contempt and impose punishment." *Pounders* v. *Watson*, 521 U.S. 982, 987 (1997). "To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary." *Id.* at 987-988, quoting from *Cooke* v. *United States*, 267 U.S. 517, 534-535 (1925).

In Massachusetts, criminal contempt is covered by Mass. R.Crim.P. 43 ("Summary Contempt Proceedings") and Mass. R.Crim.P. 44, 378 Mass. 920 (1979) ("Contempt").[6] Rule 43 establishes several conditions or requirements that must exist

---

[5]He also argues that (1) in considering the defendant's motion to reconsider and vacate, the judge shifted the factual basis for guilt from the defendant's gesture to his participation in the disturbance; (2) the judge violated rule 43 by waiting eight days to enter a judgment and more than eighteen days to impose a sentence; and (3) the judge failed to consider fully the volatility of the circumstances.

[6]Contempt may be either criminal or civil. Criminal contempt is punitive, designed "to punish an attempt to prevent the course of justice." *Furtado* v.

before a judge may enter summary contempt. As per the rule, a judge may act when she determines that summary punishment is necessary to maintain order in the courtroom and "(1) the contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court; (2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and (3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars."[7] Mass.R.Crim.P. 43(a). If any one of these conditions is not met, the contempt must be tried pursuant to Mass.R.Crim.P. 44.[8] See Mass.R.Crim.P. 44(a); *Commonwealth* v. *Brunnell*, 65 Mass. App. Ct. 423, 424 (2006).

*Furtado*, 380 Mass. 137, 141 (1980), quoting from *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 373 (1927). Civil contempt, on the other hand, is " 'remedial and coercive,' intended to achieve compliance with the court's orders for the benefit of the complainant. *Cherry* v. *Cherry*, 253 Mass. 172, 174 (1925)." *Ibid.*

[7]The remainder of rule 43 provides:

"(b) Nature of the Proceedings. Before making a judgment of contempt and imposing punishment, the presiding judge shall give the contemnor notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment. If the judge then determines that the sentence he would impose may be in excess of three months imprisonment or a fine of five hundred dollars, he shall bind the contemnor over for trial to be held in accordance with rule 44. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based and shall be signed by the judge and entered on the record. Where the interests of orderly courtroom procedure and substantial justice require, the presiding judge may defer imposition or execution of sentence until after the trial is completed.

"(c) Appeal. The contemnor's only right of appeal shall be to the Appeals Court."

[8]Rule 44 applies in the District and Superior Courts and provides as follows:

"(a) Nature of the Proceedings. All criminal contempts not adjudicated pursuant to rule 43 shall be prosecuted by means of complaint, unless the prosecutor elects to proceed by indictment. Except as otherwise provided by these rules, the case shall proceed as a criminal case in the court in which the contempt is alleged to have been committed.

"(b) Special Provisions for District Court. The District Court shall have jurisdiction to try all contempts committed therein except those prosecuted by indictment. Whenever a contemnor asserts his right to a

"Summary" contempt "does not refer to the timing of the action with reference to the offense but refers to a procedure which dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial." *Sacher* v. *United States,* 343 U.S. 1, 9 (1952).

As basic criminal protections are inherently preferable in all criminal proceedings, summary contempt is disfavored and narrowly construed. See *Commonwealth* v. *Corsetti,* 387 Mass. 1, 7 (1982). Compare *Commonwealth* v. *Rogers,* 46 Mass. App. Ct. 109, 110-111 (1999). The United States Supreme Court has consistently held that summary contempt is only appropriate where the judge observes the contemptuous conduct. See *Ex parte Terry,* 128 U.S. 289, 307 (1888); *Cooke* v. *United States,* 267 U.S. 517, 535 (1925); *In re Oliver,* 333 U.S. 257, 275-276 (1948). See also *Bloom* v. *Illinois,* 391 U.S. 194, 204-205 (1968). In *Ex parte Terry, supra* at 298, the judge witnessed the petitioner, an attorney, assault a U.S. marshal in the courtroom with a deadly weapon. The petitioner then forcibly left the courtroom before the judge ordered him in contempt. *Id.* at 310-311. In denying the petitioner's writ of habeas corpus, the Court set forth the principle that "[i]f the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned . . . without any further proof or examination." *Id.* at 307, quoting from 4 Blackstone, Commentaries 286. The Court went on to state that, in contrast, summary contempt proceedings are inappropriate for "matters that arise at a distance, and of which the court cannot have so perfect a knowledge . . . ." *Ibid.*

Sixty years later, the Supreme Court reiterated this point in *In re Oliver, supra* at 274-275, stating that "for a court to

jury trial in District Court, the trial shall be held before a jury in District Court. The contemnor's only right of appeal shall be to the Appeals Court.

"(c) Disqualification of the Judge. The contempt charges shall be heard by a judge other than the trial judge whenever the nature of the alleged contemptuous conduct is such as is likely to affect the trial judge's impartiality."

exercise the extraordinary but narrowly limited power to punish for [summary] contempt . . . the court-disturbing misconduct must not only occur in the court's immediate presence, but . . . the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct." 333 U.S. at 274-275. Citing the reasoning of *Ex parte Terry, supra*, the Court held that the use of summary contempt proceedings where the judge depended on others to learn of the contemptuous conduct violated due process. *In re Oliver, supra* at 277-278.

These principles have been addressed and adopted in the Commonwealth. "The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, *are actually observed by the court*, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public" (emphasis added). *Garabedian* v. *Commonwealth*, 336 Mass. 119, 124-125 (1957), quoting from *In re Oliver*, 333 U.S. at 275. "If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires . . . that the accused be accorded notice and a fair hearing . . . ." *Garabedian* v. *Commonwealth, supra* at 125, quoting from *In re Oliver, supra* at 275-276.[9]

Rule 43 was promulgated in 1979. The *Oliver* requirement that the judge observe the contemptuous conduct is addressed in the phrase "the contemptuous conduct could be seen or heard by the presiding judge." See Mass.R.Crim.P. 43(a)(1). The Reporters' Notes to Mass.R.Crim.P. 43, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1727 (LexisNexis 2008),

---

[9]Other jurisdictions have similarly held that where a fight breaks out in the courtroom the judge may only apply summary contempt proceedings after observing all of the contemptuous conduct. See *United States* v. *Marshall*, 451 F.2d 372, 376 (9th Cir. 1971) (summary proceedings pursuant to Fed. R.Crim.P. 42[a] not proper where judge left courtroom during fight); *People* v. *Thor*, 6 Ill. App. 3d 1045, 1050 (1972) (summary proceedings inappropriate where judge relied on details of fight he did not observe). See also Annot., Right to Counsel in Contempt Proceedings, 52 A.L.R. 3d 1002, 1009-1019, 1024-1029 (1973 & Supp. 2008).

indicate the judge must have "personally viewed the contemptuous conduct" before applying summary contempt proceedings.[10]

The common scenario in which summary contempt is permissible is illustrated in *Commonwealth* v. *Wiencis*, 48 Mass. App. Ct. 688, 691-692 (2000), and *Commonwealth* v. *Brunnell*, 65 Mass. App. Ct. at 425-426.[11] In *Commonwealth* v. *Wiencis, supra* at 689, the defendant, after hearing his guilty verdict, erupted and screamed at the jury. The jury were removed. The judge calmed and admonished the defendant, who apologized and promised to behave. Upon the return of the jury, the defendant again lost control, threatening jurors. The judge warned the defendant that he could be found in contempt for such disruptive behavior. Even after the jury were dismissed, the defendant continued his "flagrant conduct," until the judge found him in contempt. *Id.* at 691-692.[12]

It is not always necessary to warn a defendant, as illustrated in *Commonwealth* v. *Brunnell, supra.* There, the defendant, unhappy with the judge's ruling denying a bail reduction, remarked, "Fuck you, judge; fuck you." *Id.* at 425. When the judge then asked the court officers to "[t]ake him out please," the defendant replied, "You know what, judge? You can suck my fuckin' dick." *Ibid.* Under these circumstances, summary contempt was appropriate, if not mandated. See *id.* at 428. The conduct was offensive, to

[10]While the Reporters' Note indicates that the rule conforms to common law, it is, nonetheless, somewhat awkwardly written. By using the phrase "could be seen" rather than "must be seen," the rule somewhat muddies the waters. A further problem with the rule is the tension between rule 43(a)(2), which indicates that the judgment of contempt must be immediately announced (although sentencing can be delayed), and rule 43(b), which states that "[b]efore making a judgment of contempt . . . the presiding judge shall give the contemnor notice . . . and . . . opportunity to adduce evidence or argument . . . ."

[11]Criminal contempt cases break down into two general areas, involving either a defendant or an attorney. See, e.g., *Commonwealth* v. *Viera*, 41 Mass. App. Ct. 206 (1996) (defendant); *Commonwealth* v. *Diamond*, 46 Mass. App. Ct. 103 (1999) (attorney). Concerning the latter, a major concern is not chilling an attorney's obligation to represent a client zealously. See *Sussman* v. *Commonwealth*, 374 Mass. 692, 696 (1978) ("In determining whether the power to punish summarily is justified, we must give due weight to the importance of vigorous advocacy").

[12]In *Commonwealth* v. *Wiencis, supra*, the judge showed remarkable restraint and patience. Indeed, he could have found the defendant in contempt after his initial outburst.

which the judge immediately reacted. Contrast *Taylor* v. *Hayes*, 418 U.S. 488, 497 (1974) ("The usual justification of necessity . . . [required for summary punishment] is not nearly so cogent when final adjudication and sentence are postponed until after trial"); *Commonwealth* v. *Corsetti*, 387 Mass. 1, 8 (1982) ("where time is not of the essence, summary contempt proceedings are inappropriate").

The bright line — requiring that the judge actually observe the contemptuous conduct — created by the United States Supreme Court and adopted by Massachusetts conforms with due process by ensuring procedural safeguards to any defendant where the judge did not witness the conduct. In such instances, proceedings — in the form of a typical criminal trial — are conducted pursuant to rule 44. See Mass.R.Crim.P. 44(a); *Commonwealth* v. *Viera*, 41 Mass. App. Ct. 206, 209 (1996).

Given what we have stated, while the judge personally observed the fight, she did not know what caused it.[13] As she required testimony from a juror and information from a newspaper article to establish what had happened, the use of rule 43 summary contempt was not warranted. The matter should have proceeded under Mass.R.Crim.P. 44.[14]

*Judgment reversed.*[15]

*Finding set aside.*

---

[13]If she had, she could have immediately found the defendant in contempt. Sentencing could have been postponed for a few days to enable her to finish the trial. A hearing, pursuant to Mass.R.Crim.P. 43(b), would have been required, to allow the defendant to be heard, prior to sentencing.

[14]The defendant also could have been charged, under G. L. c. 268, § 13C, with creating a disruption of court proceedings.

[15]Some cases not only reverse, but also enter judgment for the defendant. See, e.g., *Garabedian* v. *Commonwealth*, 336 Mass. at 126; *Commonwealth* v. *Viera*, 41 Mass. App. Ct. at 210; *Commonwealth* v. *Contach*, 47 Mass. App. Ct. 247, 254 (1999). Other cases merely reverse the judgment. See, e.g., *Sussman* v. *Commonwealth*, 374 Mass. at 702. Compare *Commonwealth* v. *Rogers*, 46 Mass. App. Ct. at 113. Needless to say, there can be no further proceeding against the defendant under rule 43.