**[J-67A-C-2014][M.O. – Eakin, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 47 EAP 2013 |
| | : | |
| Appellant | : | Appeal from the Judgment of the |
| | : | Superior Court entered on 5/15/12 at |
| v. | : | No. 1268 EDA 2011, reargument denied |
| | : | 7/18/12, vacating and remanding the |
| KATRINA MOODY, | : | judgment of sentence entered on |
| | : | 5/6/11, in the Philadelphia Municipal |
| Appellee | : | Court, Criminal Division at No. MC-51- |
| | : | MD-0000083-2011 |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 48 EAP 2013 |
| | : | |
| Appellant | : | Appeal from the Judgment of the |
| | : | Superior Court entered on 5/15/12 at |
| v. | : | No. 1310 EDA 2011, reargument denied |
| | : | 7/18/12, vacating and remanding the |
| BARBARA IVERY, | : | judgment of sentence entered on |
| | : | 5/6/11, in the Philadelphia Municipal |
| Appellee | : | Court, Criminal Division at No. MC-51- |
| | : | MD-0000085-2011 |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 49 EAP 2013 |
| | : | |
| Appellant | : | Appeal from the Judgment of the |
| | : | Superior Court entered on 5/15/12 at |
| v. | : | No. 1316 EDA 2011, reargument denied |
| | : | 7/18/12, vacating and remanding the |
| BERNADETTE ARCHIE, | : | judgment of sentence entered on |
| | : | 5/6/11, in the Philadelphia Municipal |
| Appellee | : | Court, Criminal Division at No. MC-51- |
| | : | MD-0000084-2011 |
| | : | |
| | : | ARGUED:  September 9, 2014 |

***DISSENTING OPINION***

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED:  October 27, 2015**

In my view, there are simply too many irregularities associated with the summarily-imposed direct criminal contempt convictions in this case for them to be sustained.  For example, at the initial summary hearing, the common pleas court foreclosed the presentation of *anything*, in the form of either statements or evidence, from Appellees based on its own concern for Appellees' Fifth Amendment rights.  *See* N.T., Apr. 6, 2011, at 13 ("[R]ather than have you say anything at this point, I think I'm going to appoint each of you attorneys.").  Having then explained that "before I make a final finding, I want you to have attorneys to be able to talk to you *so you can present your case*," *id.* at 16 (emphasis added), the court subsequently declined to accept that any defense at all could be presented regarding Appellees' guilt.  *See* N.T., Apr. 13, 2011, at 8-9.  At such later juncture, the common pleas judge stated that guilt already was determined, and that he regarded defense counsel's role as directed solely to mitigation of Appellees' sentences.  *See id.* at 13-14 ("[A]s I said, my primary purpose for appointing you was to protect their rights but still allow them to tell the Court what they want to tell the Court as far as mitigating factors or other matters that might impact my decision on what the sentence should be.").

I find this, in and of itself, to represent an impingement upon due process, since, at a bare minimum, Appellees should have been permitted to say *something* in their own defense -- even in a summary proceeding -- before a final determination of guilt, just as the common pleas court seemingly had recognized previously.[1]

---

[1] The rare exception should be where immediate punishment is essential, as where its rendering would be necessary to restore order in the courtroom.  *See infra.*  Here, however, order had been restored well before punishment was imposed.

There is much additional looseness associated with the present record. The common pleas judge never propounded, on the record, his own discrete observations of Appellees' individualized conduct upon which he based his summary findings of contempt; the court officer who the judge summoned as a witness to describe such conduct identified Appellees by their clothes, but failed to associate clothes with names; and the common pleas judge attempted to utilize his Rule 1925 opinion to shore up the multiple inadequacies in the record.

The majority opinion, for its part, stresses the necessity for the courts' power to respond immediately to contemptuous conduct impacting the court's authority, but it appears to downplay the disfavor in which summary punishment is held in light of the heightened potential for abuse. *See, e.g.*, *Sacher v. United States*, 343 U.S. 1, 8, 72 S. Ct. 451, 454 (1952). By reason of this latter concern, as emphasized by Mr. Justice Baer, the power is viewed as an extraordinary one which is to be exercised with great caution and prudence. *See, e.g., In re Oliver*, 333 U.S. 257, 275, 68 S. Ct. 499, 508 (1948). Again, the record of this case simply does not reflect such exercise.

Cases such as this bring to mind the many criticisms of the law of contempt along the following lines:

> The literature on contempt of court is unanimous on one point: the law is a mess. While many aspects of the contempt process have been targeted for criticism, three objections predominate. First, the power of the courts to impose sanctions for insult or disobedience is not meaningfully constrained. . . . Second, judges wielding this vast and unlimited power suffer from an obvious and ineradicable conflict of interest. Vindicating the court's dignity and authority is the fundamental purpose of contempt, and the judge is usually actively involved in initiating contempt proceedings. Thus, the roles of victim, prosecutor, and judge are dangerously commingled. Third, the law is chaotic and confusing, both substantively and

procedurally. Common-law development has afforded no stable and satisfactory definition of contumacious conduct, and no clear-cut rules govern the adjudication of contempt proceedings.

Earl C. Dudley, Jr., *Getting Beyond the Civil/Criminal Distinction: A New Approach to the Regulation of Indirect Contempts*, 79 Vᴀ. L. Rᴇᴠ. 1025, 1025-29 (1993) (footnotes omitted).

While I support the view that the power to summarily punish some forms of direct criminal contempt is essential, in light of the above, I am a proponent of clearer constraints. *Accord In re Contemnor Caron*, 744 N.E.2d 787, 802 (C.P. Ohio 2000) (advancing the position that contempt law can be better stabilized by enforcing requirements of "both the 'judge's personal knowledge' and . . . 'imminent threat'" to the administration of justice (citations omitted)). In this regard, like Justice Baer, I would adhere to the line of decisions requiring personal observation by the court of specific contemptuous behavior. *See, e.g.*, *Commonwealth v. Nicholas*, 905 N.E.2d 118, 122 & n.9 (Mass. App. Ct. 2009) ("Other jurisdictions have similarly held that where a fight breaks out in the courtroom the judge may only apply summary contempt proceedings after observing *all of the contemptuous conduct*." (emphasis added; citations omitted)). *See generally In re Oliver*, 333 U.S. at 274-75, 68 S. Ct. at 508 ("[F]or a court to exercise the extraordinary but narrowly limited power to punish for contempt without adequate notice and opportunity to be heard, . . . the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct[,]" and "knowledge acquired from the testimony of others . . . would not justify conviction without a trial in which there was an opportunity for defense." (citing *Cooke v. United States*, 267 U.S. 517, 536, 45 S. Ct. 390, 394-95 (1925))).

To the degree the majority relies upon *Commonwealth v. Falana*, 548 Pa. 156, 696 A.2d 126 (1997), in support of the contrary proposition, I note that the relevant

passage of such decision discusses "contempt" generically, *see id.* at 162, 696 A.2d at 129, thus diverting focus from the manifest differences between direct criminal contempt warranting summary punishment, other instances of direct criminal contempt, and indirect criminal contempt.[2]  Accordingly -- and in light of the tension with decisions of the Supreme Court of the United States -- I would not treat *Falana* as dispositive relative to specific requirements and safeguards associated with direct criminal contempt proceedings conducted in a summary fashion.  Again, I believe that better focus and precision are necessary to defining appropriate summary responses to certain instances of direct criminal contempt.

The United States Supreme Court has also long held that the justification for the narrow due process exception for certain instances of direct criminal contempt depends upon the necessity of *immediate* punishment in vindication of the court's authority.  *See Cooke*, 267 U.S. at 536, 45 S. Ct. at 394-95.  To my mind, this highlights the additional difficulty in the common pleas judge's decision to suppress *any* guilt-related statement or defense, given that several days passed between the contemptuous conduct and the court's ostensible final determination of contempt and imposition of punishment.

In summary, it is my position that Appellees were not afforded sufficient process to sustain their summarily-imposed contempt convictions, and the Superior Court correctly afforded them due relief.

Madame Justice Todd joins this dissenting opinion.

---

[2] Ultimately, the discussion in *Falana* appears to focus more upon the nature of the contemnor's intent than on the process required to support a conviction.  *See id.* at 162-63, 696 A.2d at 129 ("The fact that the [a]ppellant waited until he was out of the range of the judge's hearing to utter his statement to the victim, supports the trial court's conclusion that he acted with wrongful intent.").